P. J. QUEALY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7196. Promulgated March 9, 1927.

*Earl B. Breeding, Esq.*, and *Walter M. Burkhardt, Esq.*, for the petitioner.

*L. C. Mitchell, Esq.*, for the respondent.

MILLIKEN: This proceeding results from the determination by the Commissioner of a deficiency in income taxes for the calendar year 1921, in the amount of $6,016.44. Petitioner claimed as a deduction, in his tax return filed for the year 1921, the amount of $78,584.38, representing a loss sustained on stock that became worthless in that year. The Commissioner determined that the stock became worthless in 1920 and allowed the deduction for that year. The sole issue involved in this proceeding is the year in which petitioner sustained the loss.

### FINDINGS OF FACT.

Petitioner is a resident of Kemmerer, Wyo. In the year 1918, the Liberty Potash Co. was organized and incorporated, under the laws of the State of Utah, and erected a plant at Green River, Wyo., to extract potash from the leucite deposits in Sweetwater County, Wyoming. Petitioner was approached, during the year 1918, with respect to the purchase of stock in the corporation, it being represented to him that the manufacturing plant would use large quantities of coal, and, as he was the owner of adjacent coal mines, he believed that an investment in the stock would prove advantageous not only in itself, but also in that the establishment of a manufacturing plant would provide a ready market for his coal. During the years 1918 and 1919, he purchased stock for cash, in the Liberty Potash Co., to the extent of $76,575. In the latter part of 1919, the corporation began active operations and shipped large quantities of potash to the eastern markets. Much of the machinery and equipment had been purchased on the basis of a small cash payment, with title to remain in the seller until full payment had been made. The company did not promptly pay its bills as they became due. In the latter part of 1919 many of the creditors were demanding immediate payment for supplies. Creditors of the company, in 1919, filed a petition in the proper court for the appointment of a receiver. On January 2, 1920, a receiver was appointed for the company. The receiver took over the operation of the plant and ran it until February 26, 1920, upon which date the court, upon petition of the receiver, directed that the plant be shut down and that the company cease operations.

Prior to the issuance of the order to close down the plant, the court had, on February 16, 1920, authorized the receiver to issue receiver's certificates in the amount of $37,500. Petitioner purchased receiver's certificates in the amount of $3,750.

After the receiver was appointed for the Liberty Potash Co., a committee for the protection of creditors and preferred stockholders was formed, held meetings, and took joint action under the name of "Joint Committee of Creditors and Preferred Stockholders of the Liberty Potash Company." Petitioner was a member of this committee.

The committee of creditors and stockholders conducted active negotiations with various parties seeking to interest capital, to the end that the company might be financially rehabilitated. During the years 1919, 1920, and 1921, they were successful in interesting Armour & Co. to the extent that the latter made many experiments and tests at the property of the corporation and only withdrew from active participation in lending financial assistance owing to its own difficulties in that particular. The American Smelting & Refining Co. also made experiments and tests. Finally, under date of May 14, 1921, a contract was entered into between the Liberty Potash Co. and W. W. Crocker, of San Francisco, Calif., by the terms of which the latter agreed to take over the operation of the plant, satisfy the claims of creditors, and give the stockholders a portion of stock in a corporation to be organized.

Stockholders were assessed by the committee during the years 1920 and 1921, in various amounts, on the stock owned by them. Petitioner paid assessments as follows:

| | |
|---|---|
| April 8, 1920 | $760. 76 |
| November 21, 1920 | 380. 38 |
| March 12, 1921 | 500. 00 |
| August 17, 1921 | 368. 25 |

The assessments received were used to defray the expenses of the committee in carrying on its negotiations during the years 1920 and 1921.

In 1919, the Liberty Potash Co. purchased certain boilers under a title-retaining contract. Large sums were due on the boilers, and the parties secured by the title-retaining contract petitioned a proper court, on January 13, 1921, for permission to remove the boilers. Petitioner, on March 25, 1921, agreed to purchase the boilers provided the parties would consent to leave the boilers in the plant of the Liberty Potash Co. Petitioner agreed to assume this liability, believing, as he did, that to remove the boilers would result unfavorably in concluding the contract with the Crockers for the taking over of the plant.

In the fall of 1921, W. W. Crocker advised the committee that he did not desire to proceed under his contract. All creditors and stockholders were advised that Crocker had determined not to proceed under the contract. The efforts of the committee were thus made futile.

On October 10, 1921, the receiver, after all negotiations for the rehabilitation of the company by outside interests had failed, petitioned the court for authority to sell at public or private sale all of the property and assets of the Liberty Potash Co. In 1921 the court authorized the sale, basing its approval of the sale on the facts that the Liberty Potash Co. had no cash on hand, owed creditors $489,500, owed receiver's participating certificates $37,500, and had incurred receiver's expenses in the amount of $75,000. The assets of the Liberty Potash Co. were not sufficient to pay the creditors, the receiver's certificates, or the expenses of receivership.

The stock of the petitioner in the Liberty Potash Co. became worthless in the year 1921, and he sustained a loss in that year in the amount of $78,584.38.

> *Judgment will be entered on 15 days' notice, under Rule 50.*