ROYAL PACKING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3962. Promulgated October 4, 1928.

*Dan J. Chapin, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, and *Alva C. Baird, Esq.*, for the respondent.

775

OPINION.

MILLIKEN: The sole issue in this proceeding was decided by the Board on October 13, 1926, adversely to petitioner. See 5 B. T. A. 55. Thereafter this proceeding was taken by petitioner on writ of error to the Circuit Court of Appeals for the Ninth Circuit. That court reversed the decision of the Board. See 22 Fed. (2d) 536. After stating the issue and quoting the whole of our findings of fact and our opinion, the court said:

The applicable principles of law are not in controversy, and we content ourselves with little more than a bare statement of them. The taxpayer was not entitled to the deduction merely because the stock may have subsequently become worthless or because, in the light only of subsequent developments, it may appear to have been inherently worthless during the year in question. Nor can the deduction be claimed for a mere shrinkage in value. A loss may be said to be actually sustained in a given year if, within that year, it reasonably appears that such stock has, in fact, become worthless. It is not requisite that there be a charge-off on the books of the taxpayer, and the ultimate fact of worthlessness may be shown by circumstances, as in other cases where that question is in issue. But the burden is on the taxpayer to establish the fact by reasonably convincing evidence. * * * (Here follow numerous citations.)

Giving to terms their proper legal significance, vital parts of the Board's decision seem to be irreconcilably inconsistent with each other. It is said that "the Universal Packing Company began operations in 1917 and from the beginning was a failure financially"; and that "the evidence is clear that the Uni-

versal Packing Company became insolvent and ceased to function prior to November 1, 1918, a date within the taxable year." And yet it is further stated that "there is no convincing evidence that any loss was sustained in that taxable year." But how could the stock, and particularly the common stock, of such a corporation, out of business and wholly insolvent, be of any value? And adding to the confusion is the fact that, as we view it, the evidence fails to warrant either of the first two statements. The record may suggest the possibility but it is so meager, disconnected, and altogether inadequate, as to leave the ultimate facts largely to conjecture and speculation. Moreover, if it was intended to hold that "there was no convincing evidence that any loss was sustained in the taxable year" because, as stated, the sale of the assets of the corporation and the "final liquidation of its business were not completed within the fiscal year," the reasoning is deemed to be invalid.

Upon a review in this class of cases, we are given the "power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require." Section 1003 (b), Revenue Act 1926, pt. 2, 44 Stat. 110 (26 USCA § 1226). Questions of fact are exclusively for the Board, except that we may consider whether its findings are supported by any substantial evidence. Senate Committee Report 52, Sixty-Ninth Congress, First Session, p. 36.

We are of the opinion that justice requires a reversal of the decision, and that the case be remanded for rehearing; and such will be the order, without costs.

This opinion is the law of this case. It therefore becomes our duty to determine whether petitioner has met the burden of proof imposed upon it by establishing by reasonably convincing evidence that it was apparent in its fiscal year ending January 31, 1919, that its stock of the Packing Company was worthless. The court in referring to the record made in the previous hearing stated "The record may suggest the possibility of a loss but it is so meager, disconnected, and altogether inadequate, as to leave the ultimate facts largely to conjecture and speculation." Petitioner was therefore put on notice of the shortcomings of the previous record and at the second hearing of this cause should be expected to rectify the same. To prove that the stock was in fact worthless in that year, it is not sufficient for petitioner to show only that subsequent developments proved it to have been worthless. Petitioner introduced at the hearing four witnesses—its president, a tax consultant, the vice president of the Packing Company, and a banker.

Petitioner's president, who owned 95 per cent of its capital stock, in January, 1919, directed its bookkeeper to charge off as of January 31, 1919, the amount of $12,000 as a loss on its Packing Company stock and in the next January directed that the remaining $3,000 be charged off as a loss occurring in the fiscal year ending January 31, 1920. Entries were made pursuant to these instructions. He testified that he was a bookkeeper and "thoroughly experienced with the elements of bookkeeping and accounting" so that the charge on

the books of account meant more to him than to the average business man. Giving full effect to the fact that no charge off was requisite in order to establish a loss, the fact remains that these charges, made pursuant to the direction of the president, have a material bearing on the question whether this witness was on the date of the first entry of opinion that the stock was wholly worthless or had only shrunk in value to the extent shown by the entry.

We are not impressed by this witness' explanations of these entries. Subsequent events appear to have made a deeper impression on his memory than then existing circumstances. It is significant that no change was made in these entries until 1924, or more than five years after the date of the first entry. At that time a change was made only after the revenue agent had determined not to allow any part of the loss in the fiscal year ending January 31, 1919, and to allow the whole loss in the next subsequent fiscal year. Thus, up to the year 1924, it appears that petitioner's books reflected the opinion of its president that the loss was only partial, that is, that the value of the stock had shrunk. While we are of opinion that these entries reflected as of the dates they were made the then concept of this witness, it does not appear that he then had any real knowledge of the financial condition of the Packing Company. He testified at the hearing (April 13, 1928) that he did not even then know the amount of the liabilities of the Packing Company and that he did not know until the year in which the latter hearing was had what was its capitalization. In the absence of these factors, he could have no real conception of the value of the stock.

In order to show that this common stock was worthless in the fiscal year ending January 31, 1919, this witness testified that he had heard in 1919 and at the time he heard of the sale of the plant of the Packing Company, which occurred in October, 1919, that the preferred stockholders had received only $1.004 on each share·of the par value of $100. No attempt was made to prove such fact by testimony of any person who knew it of his own personal knowledge. No preferred stockholder was introduced as a witness. On cross-examination it was brought out that this witness had testified at the former hearing that he did not know when the plant was sold; that he had never been definitely informed but that he thought it was in 1919. In view of the character of this testimony, we have been unable to find as a fact what amount, if any, the preferred stockholders received for their stock. Petitioner's president has failed to give any reasonably convincing testimony that at any time during the fiscal year ending January 31, 1919, he had reasonable grounds to believe that this stock was worthless.

The tax consultant testified only as to the change in the entries made in petitioner's books in 1924 when the whole loss was charged

to the fiscal year ending January 31, 1919. His testimony is set forth in our findings of fact.

The vice president of the Packing Company is the only witness who was directly connected with that company and who attempts to testify as to any substantive fact relative to its financial condition. He had for 20 years prior to his connection with this company been in the employ of the Cudahy Packing Co.—in what capacity does not appear.

He was employed by the Packing Company as its practical man and it was distinctly understood that he was to have nothing to do with its financial affairs. He left the employ of the company in September, 1918. This witness placed the liabilities of the Packing Company as of a date not shown as between $120,000 and $130,000. He testified that the plant had a salvage value of about $175,000; that it had at times accounts receivable of over $40,000; that it had numerous automobiles, and quite an inventory of supplies. When asked what the plant sold for in October, 1919, this witness, who has been employed by the purchaser to make a resale of the plant, answered that he did not know the exact amount but that he had been informed that it was between $95,000 and $120,000. All this testimony is hearsay. It was testified that the books could not be located, and we would be disposed to accept the testimony of this witness but for his painful lack of memory. In testifying as to the sale price of the plant, the exact amount of which he had been told, the maximum and minimum amounts suggested by his faulty memory varied by an amount equal to nearly one-third of the latter guess. No foundation was laid to show that he could testify with any reasonable degree of competency as to the salvage value of the plant. It is not shown that he was either connected with or had even heard of the disposition of such a plant. Besides, there is left out of the picture the value of many assets such as trucks, supplies, and accounts receivable. This witness further testified that he considered his stock worthless as of November 1, 1918. On cross-examination he thus explained this statement:

Q. You treated this stock as having some value, did you?
A. Well, really I did not consider it, to tell you the truth.
Q. You did not consider whether it did or did not have value, did you?
A. That is the idea exactly.

The last witness introduced by petitioner was the president of a national bank at Fresno, Calif. This witness testified that his bank had refused loans to the Packing Company; that he had seen statements of that company and that he had determined that it was not expedient for his bank to lend it money; that he did not remember the exact date the statements were made; that the company had no credit as of November 1, 1918; that he purchased a small amount of

the stock at a date not given upon the guaranty of the president of the Packing Company to hold him harmless by reason of his purchase; that his bank would not have loaned money on the sole security of the stock; that he did not remember when the Packing Company closed down; that he considered his stock worthless within the year 1918; that in his income-tax return for that year he deducted the amount invested in the stock as a loss; and that his return was investigated and said loss allowed but that whether such deduction was proper was neither raised nor discussed.

It is to be noted that the last witness furnished no facts to substantiate his opinion. Whether the Packing Company was in such a financial condition in 1918 as to justify the witness in taking a deduction for the loss of his investment differs from the issue in this case only that in this proceeding the fiscal year involved includes January, 1919. The judgment of this banker, while an evidential fact, is of little weight unless sustained by other evidence. The burden rests on petitioner to show by reasonably convincing evidence the fact, if it be a fact, that within its fiscal year ending January 31, 1919, the stock had become worthless. This is a substantive fact which must be proven. The judgment of this banker on this issue can not be substituted for the judgment of the Board. The banker stated that his opinion was based on certain statements made by the Packing Company. These statements no doubt reflected the assets and liabilities of the Packing Company and were important and should have been introduced in evidence or, if lost, their contents should have been supplied by parol evidence, in order that the Board might be furnished with the evidence on which this witness based his judgment. No such evidence was introduced. The fact that this witness took a loss in his 1918 return and that such loss was allowed without comment has no bearing on the determination of the question whether such loss in fact occurred. Here respondent has determined otherwise after an investigation in which this issue was raised and discussed. The banker testified that a corporation which showed no earnings would not qualify for a loan and yet we know that many corporations showing no past or present earnings may have assets sufficient to justify a loan. The fact that the banker would make no loans for or on behalf of the corporation or would not make a loan on the stock of the corporation to be taken as collateral, does not in and of itself convincingly prove that an investment in stock of such a corporation is a total loss. There can be no doubt of the dire financial condition of the Packing Company, but that of itself does not give us enough to say an investment in its stock was a total loss such as we must say in order that petitioner prevail. The banker's testimony would have

considerable weight for corroborative purposes, but, as we have pointed out, we do not have basic facts as to which his testimony would be corroborative.

Standing at January 31, 1919, and knowing the corporation had never operated at a profit, that it faced conditions which justified no hope that it would ever do so, we nevertheless can not say, with a forced liquidation inevitable, that the common stock represented a total loss. There were assets and liabilities to be taken into account, the extent of which, as we have indicated, on the state of the record is left to conjecture. Conditions as to the value of assets may have changed in the succeeding fiscal year or charges may have been incurred in that period which resulted in the common stockholders receiving nothing on their stock.

The case presented is that of a corporation which was organized in the latter part of 1916 or the early part of 1917, and which constructed its plant in 1917 at a cost so greatly in excess of previous estimates that it absorbed its paid-in capital. In this condition it had no credit early in 1918, and to raise money to carry on its operations it issued additional capital stock. Here again we are left in the dark. We do not know the amount of this additional capital. We do know, however, that petitioner subscribed for $5,000 par value of the stock and paid for it in March, 1918, and that petitioner's president at the same time subscribed for $20,000 par value of the stock, so that it appears that this early lack of credit was not considered evidence of insolvency. We know that about $300,000 was invested in this plant and other sums, amounts unknown, were invested in other equipment. We know that at some time it held quite a large amount of bills receivable. We know not what was the approximate amount of its liabilities. We know that it operated as late as November 1, 1918. While it operated at a loss, we do not know what that loss was. We are asked by petitioner to hold that as of January 31, 1919, the amount of petitioner's indebtedness, plus its preferred capital stock, exceeded the then value of all its assets by at least the sum of $277,400, the amount of the outstanding common stock. This, on the record before us, we can not find.

Counsel for petitioner has cited to us many of our decisions where we have allowed a loss prior to actual liquidation. In those cases we had definite information as to the assets and liabilities and surrounding and attendant circumstances justified the holding that future operations or liquidation could not or would not alter the previously sustained loss.

Reviewed by the Board.

*Judgment will be entered for respondent.*