WILLIAM H. REDFIELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES D. BIGGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE F. GREEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78860, 79122, 79321.   Promulgated August 25, 1936.

*Emil J. Monde, Esq.*, and *George E. H. Goodner, Esq.*, for the petitioners.

*Paul A. Sebastian, Esq.*, and *Wilford H. Payne, Esq.*, for the respondent.

970

OPINION.

HILL: *Issue (1)*.—Each of the petitioners herein deducted in his income tax return for 1932 the cost of his stock in the Connecticut Corporation on the theory that the stock of the Process Corporation became worthless in 1932, and that the transaction by which the Process Corporation acquired all the assets of the Connecticut Corporation for shares of stock in 1930 was a reorganization in connection with which no profit or loss was recognizable for tax purposes. Hence,

the measure of the loss was the cost of the stock in the Connecticut Corporation.

Respondent disallowed the claimed deductions on the grounds (1) that the losses were sustained in 1931 and not in 1932; (2) that there was no statutory reorganization; (3) that in any event, the stock received by the Connecticut Corporation in exchange for its assets was not distributed to its stockholders pursuant to any plan of reorganization; and (4) that no basis for the computation of the losses is disclosed by the record. That each of the petitioners has sustained a loss is not in controversy, but the parties are in disagreement as to the year in which the respective losses were sustained and whether or not the record establishes the amount.

The first question under this issue, therefore, is, In what year did the losses occur? The year of loss is the year in which occurred some identifiable event which fixed with reasonable certainty the fact of loss. The law does not require a taxpayer to be an incorrigible optimist to the extent of deferring a deduction until the most remote possibility of recovery is exhausted; nor may a taxpayer at his option take the deduction in a subsequent year if it reasonably appears that the loss was sustained in a prior year. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398.

The respondent contends that the identifiable event which fixed the date of the losses in controversy here occurred in 1931, when the suit instituted by the Process Corporation against the Caro Cloth Co. was dismissed for lack of prosecution. Petitioners argue that the losses could not be said to have been sustained at that time for the reason that thereafter there was reasonable expectation of effecting recovery of a substantial amount of their investments through friendly negotiations with the president of the Caro Cloth Co. These negotiations were concluded late in 1932, at which time all hope of recovery was abandoned.

From a careful consideration of the evidence, we are of the opinion that the contention of the petitioners on this point must be sustained. At the end of 1931 it could not be said that the losses of these petitioners were complete. The circumstances as they existed at that time undoubtedly indicated a strong probability that there would be some loss, but negotiations were being actively carried on with a view to the recovery in one form or another of at least a portion of the petitioners' investments. Apparently petitioners believed in good faith that something would be recovered, and the situation, we think, reasonably supported such belief. Except for the financial difficulties encountered by the Caro Cloth Co. in 1932, the negotiations conducted by Biggs would have probably resulted in saving a substantial amount of the petitioners' investments. When those negotiations definitely failed during the taxable year solely because of the bad

financial condition of the Cloth Co., the stock in the Process Corporation became worthless, and this event fixed the date of the petitioners' losses.

The next question which arises under issue (1) concerns the proper basis for computing the amounts of the losses sustained by the petitioners in 1932. Respondent determined that the acquisition of the assets of the Connecticut Corporation by the Process Corporation did not constitute a statutory reorganization, and that in any event the subsequent distribution of the stock to the stockholders of the Connecticut Corporation was not made in pursuance of a plan of reorganization, as required by section 112 (g) of the Revenue Act of 1928. Respondent urges, therefore, that the basis for computing the losses is the value of the stock of the Process Corporation at the date received by the stockholders of the Connecticut Corporation, or the value of the assets of the Connecticut Corporation at the time transferred.

The undisputed evidence establishes that early in 1930 the Process Corporation acquired all the assets of the Connecticut Corporation in exchange for 45,000 shares of its capital stock, which stock was distributed pro rata among the stockholders of the Connecticut Corporation. The latter corporation thereupon ceased to do business. The record does not disclose whether or not this corporation was dissolved, but, irrespective of dissolution, the transaction constituted a reorganization within the meaning of section 112 (i) (1) (A) of the Revenue Act of 1928. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Nelson Co.* v. *Helvering*, 296 U. S. 374; *Western Industries Co.* v. *Helvering*, 82 Fed. (2d) 461.

Also, the record does not disclose whether the stockholders of the Connecticut Corporation surrendered their shares of stock in that corporation at the time of the distribution to them of the stock of the Process Corporation. If they did in fact surrender or exchange their shares of stock in the Connecticut Corporation for stock in the Process Corporation, both corporations being parties to the reorganization, no gain or loss was recognizable under the provisions of section 112 (b) (3) of the Revenue Act of 1928,[1] if such exchange was "in pursuance of the plan of reorganization." On the other

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[2] SEC. 112. (g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

hand, if the stock of the Process Corporation was distributed to the stockholders of the Connecticut Corporation without the surrender of their stock in that corporation, no gain to the distributees from the receipt of such stock was recognizable under section 112 (g) of the 1928 Act,[2] if the distribution was "in pursuance of a plan of reorganization." To come within the provisions of either subdivision of the statute referred to, the distribution or exchange of stock must be made in pursuance of a plan of reorganization. *National Pipe & Foundry Co.*, 19 B. T. A. 242; *Arctic Ice Machine Co.*, 23 B. T. A. 1223; *J. M. Harrison, Inc.*, 30 B. T. A. 455.

It is not necessary, however, that such a plan of reorganization be evidenced by a formal written document, such as a contract or corporate minutes. It is sufficient if the circumstances indicate that the various steps taken were pursuant to a definite plan of reorganization. *Western Industries Co.* v. *Helvering, supra.*

In the instant case, we do not know whether a formal plan of reorganization was embodied in the minutes of the Connecticut Corporation or other record, since it was testified that the records of that corporation, including its minute books, are out of existence, but the facts and circumstances, we think, clearly indicate a plan of reorganization. It follows that, under section 113 of the Revenue Act of 1932 the basis for determining the losses sustained by petitioners is the cost to them of their stock in the Connecticut Corporation. These amounts are set out in our findings of fact.

In addition to the losses so computed, petitioner George F. Green (Docket No. 79321) is entitled to a deduction in the amount of $2,500 representing the cost of the additional shares of stock in the Process Corporation purchased by him subsequent to the issue to the Connecticut Corporation of the 45,000 shares of stock in exchange for assets. Sec. 113, supra. On the first issue, respondent's action is reversed.

*Issues (2) and (3).*—These issues are involved only in the case of petitioner William H. Redfield. In 1928 this petitioner acquired 110 shares of stock in the Tool Corporation, referred to in our findings of fact, at a cost of $1,100, and in the same year loaned the corporation $135 in cash. Petitioner contends he is entitled to deduct these amounts from gross income for 1932 for the reason that both the stock and the debt became worthless in that year. Respondent takes the position that the losses were sustained prior to 1932, and therefore do not constitute allowable deductions for the taxable year. Thus the year of loss is the sole question presented for decision.

The Tool Corporation went into receivership in 1930, petitioner being appointed receiver. It is not shown that the corporation was then wholly insolvent. Whether or not it was insolvent depended

974

upon the realizable value of certain patents and other assets owned by the corporation. The assets were sold by the receiver under order of the court in 1932, and the proceeds applied to the payment of preferred claims. Nothing remained for the general creditors or stockholders. The corporation was left without assets of any kind and its stock and unpaid obligations thereupon became worthless.

We think it can not be said, under the facts here, that the corporation was so clearly insolvent that its stock and debts owed by it became wholly worthless prior to the sale of the assets in 1932. The mere fact of the corporation being in receivership alone is not enough to establish worthlessness of its stock. *P. J. Quealy*, 6 B. T. A. 419; *Henning Bruhn*, 11 B. T. A. 809. While there may have been some probability prior to the taxable year that the stock of the corporation would prove worthless, this fact was not definitely established until the assets were sold. *William E. Metzger*, 21 B. T. A. 1271; *Peter Doelger Brewing Co.*, 22 B. T. A. 1176; *Royal Packing Co.* v. *Lucas*, 38 Fed. (2d) 180, affirming 13 B. T. A. 773; *Burnet* v. *Imperial Elevator Co.*, 66 Fed. (2d) 643, affirming 25 B. T. A. 234. Petitioner is entitled to deduct the amount of his investment in the stock of the Tool Corporation as a loss sustained in 1932.

The facts referred to above which establish that the stock of the corporation became worthless in 1932 also support the conclusion that the debt owing to petitioner by the corporation became worthless in the same year. The statute requires not only that a debt, in order to be deductible, must be ascertained to be worthless, but also must be charged off within the taxable year. Sec. 23 (j), Revenue Act of 1932. But petitioner kept no individual books of account, and could not therefore charge off the debt in the ordinary way. He claimed a deduction of the amount in his return for 1932, and respondent raises no question on this point. Petitioner is entitled to the deduction claimed on account of the worthless debt. *Merritt J. Corbett*, 15 B. T. A. 698; affd., 50 Fed. (2d) 492.

*Judgment will be entered under Rule 50.*