ELECTRICAL SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74677. Promulgated September 3, 1936.

*Courtland Kelsey, Esq.*, and *Ernest N. Wood, Esq.*, for the petitioner.

*Dean P. Kimball, Esq.*, for the respondent.

OPINION.

MELLOTT: Respondent determined that petitioner, during the year 1930 realized a taxable gain of $420,545.84 through an exchange of corporate stock and asserted a deficiency in income tax in the amount of $54,994.89. Petitioner appeals and seeks a redetermination. All of the facts have been stipulated. We set out herein only those necessary for an understanding of the issue to be decided.

Petitioner is a corporation organized under the laws of the State of New York. Its principal business is the holding of stocks and bonds of utility holding and operating companies. During the taxable year before us it had net assets of approximately $30,000,000.

The United Gas Improvement Co. is also a public utility holding company. The stipulation does not disclose its capital stock structure or ownership, but petitioner owned 16,500 shares of its common stock, which had a cost basis to it (petitioner) of $357,016.66.

The United Corporation is a public utility holding company located at Wilmington, Delaware. Its capital stock issued and outstanding on May 12, 1930, consisted of 1,779,367 shares of preferred and 9,182,515 shares of common. At all times material hereto, it owned approximately 6,000,000 shares of the common stock of the United Gas Improvement Co. and a large amount of stock of Consolidated Gas Co. of New York, Public Service Co. of New Jersey, Niagara Hudson Power Corporation, and Commonwealth & Southern Corporation, in which corporations petitioner also had substantial holdings of stock.

On May 1, 1930, the United Corporation addressed a letter to the holders of the common stock of the United Gas Improvement Co., offering, until 3 o'clock p. m., May 12, 1930, to exchange its stock on a share for share basis for stock of the United Gas Improvement Co. Sixteen thousand five hundred shares of the stock of the United Corporation had a fair market value at all times material herein, of $777,562.50.

On May 10, 1930, in order to take advantage of the offer of the United Corporation, petitioner and other holders of common stock of

the United Gas Improvement Co., incorporated "The Diselin Corporation", hereinafter referred to as "Diselin." The incorporators, the number of shares of the United Gas Improvement Co. owned by each of them, and the shares of stock of Diselin issued to them, are as follows:

| Incorporators | Shares of U. G. I. Co. | Shares of Diselin |
|---|---|---|
| A. Iselin Co. | 29, 520 | 295. 2 |
| Christie P. Hamilton | 2, 750 | 27. 5 |
| G. E. Wills & Co. | 550 | 5. 5 |
| G. E. Employees Securities Corporation | 44, 000 | 440. 0 |
| Electrical Securities Corporation (petitioner) | 16, 500 | 165. 0 |
| Total | 93, 320 | 933. 2 |

Diselin was formed for the sole purpose of consummating the transaction or transactions herein set out, after which it was promptly dissolved. It transacted no business at any time other than as herein set out. Briefly its activities were as follows.

On May 12, 1930, the incorporators of Diselin transferred to it the 93,320 shares of stock of the United Gas Improvement Co. in exchange for 933.2 of its shares of capital stock, which were the only shares ever issued. Before doing so, or contemporaneously therewith, the incorporators signed an agreement providing that the issuance and delivery of the shares of Diselin should be made to them at the office of Registrar & Transfer Co. at Jersey City, New Jersey, on the 12th day of May 1930, at 11 o'clock in the forenoon, at which time they would deliver the shares of the United Gas Improvement Co. owned by them. Thereafter, and apparently before 3 p. m., of the same day, they elected a board of directors, and signed an agreement consenting to the exchange of all of Diselin's assets, viz., the 93,320 shares of common stock of the United Gas Improvement Co., for 93,320 shares of common stock of the United Corporation, "pursuant to the Plan of Reorganization adopted this day by the Board of Directors." The stock of the United Corporation was issued direct to the stockholders of Diselin pro rata, and their stock in Diselin was surrendered to it for cancellation. Certificate of dissolution was filed on June 26, 1930. The "Plan of Reorganization" was contained in a letter from Diselin to the United Corporation, bearing date of May 12, 1930, and was accepted by the United Corporation on the same day. The letter and acceptance are as follows:

MAY 12, 1930.

THE UNITED CORPORATION,
*Wilmington, Delaware.*

The Board of Directors of this Corporation has adopted a Plan of Reorganization, which has also been approved by the stockholders, whereby this

corporation offers to transfer all its properties, consisting solely of Ninety-three Thousand three hundred and twenty (93,320) shares of Common Stock of The United Gas Improvement Company, to The United Corporation solely in exchange for stock of The United Corporation, on a basis of (1) share of Common Stock of The United Gas Improvement Company for one (1) share of Common Stock of The United Corporation. The Plan is as follows:

*Plan of Reorganization*

Parties to the Plan:
　1.—The Diselin Corporation.
　2.—The United Corporation.
Description of Plan:
　The Diselin Corporation shall transfer all its properties, consisting of Ninety-three thousand three hundred and twenty (93,320) shares of Common Stock of The United Gas Improvement Company, to The United Corporation solely in exchange for Common Stock of The United Corporation, on a basis of one (1) share of Common Stock of The United Gas Improvement Company for (1) share of Common Stock of The United Corporation. The said stock of The United Corporation is to be issued direct by The United Corporation to the stockholders of The Diselin Corporation pro rata, who shall receive the same in exchange for the surrender of the stock of The Diselin Corporation to that Corporation for cancellation. The Diselin Corporation being thereupon dissolved.

　In pursuance of this Plan of Reorganization, we hereby make tender of Ninety-three thousand three hundred and twenty (93,320) shares of Common Stock of The United Gas Improvement Company by enclosing certificates for said shares duly endorsed, with the signatures thereon appropriately guaranteed.

THE DISELIN CORPORATION,
By JAMES W. HUSTED, JR., *President.*

MAY 12th, 1930.
　In pursuance of the above Plan of Reorganization, to which we are a party, we accept tender of the enclosed Common Stock of The United Gas Improvement Company.

THE UNITED CORPORATION,
By [Signed]　L. A. KEYES, *Vice-Pres.*

The respondent determined that petitioner exchanged its shares of stock of the United Gas Improvement Co. which had a cost basis to it of $357,016.66 for an equal number of shares of stock of the United Corporation which had a fair market value of $777,562.50, and that the difference between these two amounts represented taxable gain.

Petitioner contends that no gain should be recognized, either in connection with the transfer of the stock of the United Gas Improvement Co. to Diselin or in connection with the receipt of the United Corporation's stock through Diselin. It argues that such transactions are expressly excepted by sections 112 (b) (5) and 112 (b)

(3) of the Revenue Act of 1928 shown in the margin.[1]   It also avers that neither of such steps can be disregarded, since, it says "the purpose of the whole transaction was an ordinary business purpose and the petitioner had the undoubted right to adopt certain procedure to accomplish the purpose without incurring tax liability, even though liability would have been incurred had different procedure been adopted."

If petitioner had sold the United Gas Improvement stock (whether it subsequently invested the proceeds in other stock or not) it would have realized a taxable gain measured by the difference between the cost (or other basis) of the stock which it sold and the amount realized upon the sale.   (Secs. 111 and 113, Revenue Act of 1928.)   If it had exchanged the stock owned by it for stock having a fair market value in excess of the cost (or other basis) of the stock given up in the exchange, it would have been taxable upon the difference.   (Sec. 112, Revenue Act of 1928.)   Has it escaped taxation by the method used?   That is the question for our decision.

The briefs are devoted largely to discussion of the courts' opinions in the *Gregory* case (*Helvering* v. *Gregory*, 69 Fed. (2d) 809; *Gregory* v. *Helvering*, 293 U. S. 465).   Respondent contends that the case is determinative of the issue before us, while petitioner argues quite vigorously that it is not in point, especially, it says, since "later decisions of the Supreme Court (*Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Helvering* v. *Watts*, 296 U. S. 387; *Nelson Co.* v. *Helvering*, 296 U. S. 374; *Bus & Transport Securities Corporation* v. *Helvering*, 296 U. S. 391; *G. & K. Mfg. Co.* v. *Helvering*, 296 U. S. 389) substantially narrow" its scope.

The petitioner was confronted with the same dilemma as that which the taxpayer faced in the *Gregory* case.   It wished to reduce its taxes as much as possible.   To do so, it adopted substantially the same procedure as that used in the *Gregory* case.   It, together with other owners of the same stock, "incorporated a new company, organized *ad hoc* * * *" to which they transferred the stock which they wished to exchange, accepting in lieu thereof, stock in the new corporation.   Being then in control of the new corporation, they forth-

---

[1] SEC. 112. (b) *Exchanges solely in kind.—*

\*         \*         \*         \*         \*         \*         \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\*         \*         \*         \*         \*         \*         \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

with caused it to transfer all of its assets—consisting only of the stock which but a few minutes before, or at most a few hours before, had belonged to them—to another corporation in exchange for the stock which they individually wished to secure. The new corporation had now fulfilled its destiny, had performed its sole mission in life—in the language of the stipulation, "It was formed for the sole purpose of consummating the aforesaid transaction or transactions"—and was now ready to be put to death. This was done speedily and painlessly in the manner set out in the preconceived plan. The stockholders simply surrendered their stock in Diselin, accepting in lieu thereof the stock in the United Corporation, and Diselin was left as an empty shell—a corporation in name, perhaps, though it had no capital, stockholders, property, assets or liabilities.

Petitioner's argument, by which it attempts to distinguish the *Gregory* case, is not persuasive. It italicizes the word "shareholder" in the following excerpt from the opinion of the Second Circuit: "To dodge the *shareholder's* tax is not one of the transactions contemplated as corporate 'reorganization' ", and contends that a different result should follow here. It argues that while the transaction in the *Gregory* case "could not well be considered in any way furthering the business of the corporation or as having any purpose beneficial to the corporation itself" a different result should be reached here because the beneficiary of the whole transaction is a corporation, as distinguished from a shareholder, and the result to be achieved is to "further the business of the corporation" in its disposal of stock. The contention is fallacious. It presupposes that Congress intended to give a corporate shareholder immunity from tax while denying such immunity to an individual shareholder; but no such intention can be gleaned from its legislative acts.

This case upon its facts is somewhat analagous to *Thomas N. Perkins*, 33 B. T. A. 606. In that case we pointed out that the intermediate companies—corresponding in a general way with Diselin here—were not operating companies and were never intended to be such. That they were merely organized to hold, for a short period of time, the shares of stock turned over to them, after which they were to be, and were, dissolved. We held that there was no corporate reorganization because there was not "a transfer of assets by one corporation to another * * * 'in pursuance of a plan of reorganization' of corporate business", the transfer of assets not having been made in pursuance of a plan having relation to the business of the corporations, and concluded that the transaction was one in which gain must be recognized.

In *J. S. McInerney*, 29 B. T. A. 1 (affd., 82 Fed. (2d) 665), this Board held that where a corporation was created for the sole purpose of passing title to the purchaser and passing payment to the ven-

dor, the corporation being controlled by an attorney who acted for all the parties to the sale, payment made to the corporation by the purchaser must be regarded as constructively received by the vendor. The transaction before us is not unlike the above. Diselin was organized for the sole purpose of passing stock of the United Gas Improvement Co. to the United Corporation and passing stock of the United Corporation to petitioner and its associates. There was no merger, consolidation, or reorganization of a corporate business, but "simply an operation having no business or corporate purpose— a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner." (*Gregory* v. *Helvering, supra.*)

We do not interpret the subsequent decisions of the Supreme Court, *supra*, as limiting or modifying its decision in the *Gregory* case. As a matter of fact, Mr. Justice McReynolds, the author of the opinion in *Helvering* v. *Minnesota Tea Co., supra*, specifically approves such decision in the following language: "*Gregory* v. *Helvering*, 293 U. S. 465, revealed a sham—a mere device intended to obscure the character of the transaction. We, of course, disregarded the mask and dealt with realities."

We need not extend this opinion. Suffice it to say that we are convinced there was no reorganization of a corporate business and that the transaction or transactions before us resulted in taxable gain to the petitioner. It follows that the respondent did not err in determining the above deficiency and his action in doing so is approved.

*Judgment will be entered for the respondent.*