**HELVERING, Com'r of Internal Revenue, v. MINNESOTA TEA CO.**

**No. 10763.**

Circuit Court of Appeals, Eighth Circuit.

April 7, 1937.

Maurice J. Mahoney, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

James G. Nye, of Duluth, Minn. (Oscar Mitchell and Mitchell, Gillette, Nye & Harries, all of Duluth, Minn., on the brief), for respondent.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

STONE, Circuit Judge.

This is a petition for review of an order of the Board of Tax Appeals denying a redetermination of income tax for 1928

assessed against respondent by the Commissioner of Internal Revenue.

For years prior to 1928, respondent corporation had been engaged in retail business. On June 18, 1928, the stockholders of respondent (three in number) resolved to form a corporation to be known as the Peterson Investment Company. July 2d, respondent gave an option on certain assets to the Grand Union Company. July 6th, this option was accepted. July 14th, the Peterson Investment Company was organized and its entire stock acquired by respondent in exchange for the real estate, buildings, investments, and some miscellaneous assets of respondent—the property so exchanged included all owned by respondent except the assets covered by the option. Such stock was immediately distributed to the three stockholders of respondent. July 24th, there was a supplemental agreement to the option between respondent and the Grand Union Company. August 22d, a stockholders' meeting of respondent adopted a resolution whereby it was provided that all moneys received under the contracts with the Grand Union Company should be at once distributed to the three stockholders "in the proportion of their respective stockholdings" in respondent "upon the assumption by the stockholders of all the corporate debts of Minnesota Tea Company in order to enable the company to hold all the corporate stock [in the Grand Union Company] or securities received by it for its assets on such sale thereof without being compelled to sell any part of the same."[1] August 23d, the contracts were performed by the transfer of all these assets of respondent to the Grand Union Company in return for 18,000 shares of common stock of that company and $426,842.52 in cash. Immediately, this cash was distributed to the three stockholders in proportion to their respective holdings in respondent and the stockholders assumed payment of like proportionate parts of the corporate indebtedness of respondent, amounting to $106,471.73. This assumed indebtedness has been paid by the stockholders.

Both the Commissioner and the taxpayer assumed this entire transaction to be a reorganization within section 112 of the Revenue Act of 1928 (45 Stat. 791, 816 [26 U.S.C.A. § 112 and note]). Though so assuming, the Commissioner assessed a tax against $106,471.73, which was the indebtedness of respondent assumed and paid by its stockholders as above. Upon appeal by respondent to the Board of Tax Appeals, the Board, of its own volition, examined and determined that the transaction was not a reorganization within section 112 but was a sale of assets by respondent to the Grand Union Company. On petition to review, this court held the transaction was within section 112 and remanded the matter to the Board for further proceedings. Minnesota Tea Co. v. Com'r, 76 F.(2d) 797. The Supreme Court granted certiorari (296 U.S. 562, 56 S.Ct. 107, 80 L.Ed. 397) and affirmed the decision of this court (296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284).

On retrial, the Board determined there was no tax liability as to the $106,471.73, representing the above indebtedness. The Commissioner brings this petition for review to question that ruling.

The issue is well and concisely stated in the opinion of the Board as follows: "The petitioner [taxpayer] contends that immediately upon the receipt of the Grand Union shares and the $426,842.52, it distributed the money in pursuance of the plan of reorganization, and that the situation is squarely within section 112 (d) (1), Reve-

---

[1] The resolution is as follows: "Resolved further that all moneys received by Minnesota Tea Company on such sales of its assets and in consideration thereof, whenever received, shall be immediately distributed to the stockholders of Minnesota Tea Company ratably and in the proportion of their respective stock holdings in Minnesota Tea Company upon the assumption by the stockholders of all the corporate debts of Minnesota Tea Company in order to enable the company to hold all the corporate stock or securities received by it for its assets on such sale thereof without being compelled to sell any part of the same, and the Board of Directors are hereby authorized and directed to so distribute the said moneys as aforesaid and in behalf of the company enter into a written agreement with the stockholders, signed and executed by the company and all the stockholders whereby said stockholders, in consideration of such distribution and for the purpose of enabling the company to continue to hold the said corporate stock and securities without being compelled to sell any part thereof for the payment of existing debts, agree to pay all the corporate debts of the Minnesota Tea Company whether due and payable or not and whether certain or contingent."

nue Act of 1928 [26 U.S.C.A. § 112 and note] providing that 'no gain shall be recognized.' The respondent urges that the shareholders' assumption of the corporate debts prevents the amount of $106,-471.73 from being regarded as a distribution by the corporation, and hence that it may not escape recognition as part of the corporation's gain."

The plan of reorganization is an exhibit introduced in evidence before the Board but not included in the record here. In view of the decision of the Supreme Court in this case and the tacit agreement of the parties that this payment to the stockholders was "in pursuance of the plan of reorganization," as required by section 112 (d), we assume this to be true and further consideration of the issue before us is based thereon. Without such assumption, we should have to have before us the "plan" and to determine whether this payment was *in pursuance* thereof.

██ The determination of the issue before us depends upon certain legal principles in conjunction with the construction of the act here involved. Those principles are as follows. It is an exemption from taxation which is here claimed by respondent and upon it lies the burden of establishing the right thereto [Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; Bowers v. Lawyers' Mortg. Co., 285 U.S. 182, 187, 52 S.Ct. 350, 352, 76 L.Ed. 690]; for income tax purposes, the component parts of a single transaction cannot be treated separately [Bassick v. Commissioner, 85 F.(2d) 8, 10 (C.C.A.2) certiorari denied 299 U.S. 592, 57 S.Ct. 120, 81 L.Ed. ——; Ahles Realty Corp. v. Commissioner, 71 F.(2d) 150, 151 (C.C.A.2) certiorari denied 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701; Prairie Oil & Gas Co. v. Motter; 66 F. (2d) 309, 311 (C.C.A.10)]; payment of

a debt is income to the debtor for taxation purposes [Helvering v. Midland Mutual Life Ins. Co., 57 S.Ct. 423, 81 L.Ed. —— [Feb. 15, 1937]; Raybestos-Manhattan v. United States, 296 U.S. 60, 64, 56 S.Ct. 63, 65, 80 L.Ed. 44, 102 A.L.R. 111; Douglas v. Willcuts, 296 U.S. 1, 8, 56 S.Ct. 59, 62, 80 L.Ed. 3, 101 A.L.R. 391; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729, 49 S.Ct. 499, 504, 73 L.Ed. 918; United States v. Boston & Maine Railroad, 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929; and applying this rule in reorganization matters and exchanges see West Texas R. & D. Co. v. Commissioner, 68 F.(2d) 77, 80 (C.C.A.10) and The Liquidating Co. v. Commissioner, 33 B.T.A. 1173, 1184]; distribution within the reorganization provisions of the Revenue Acts means distribution to stockholders and not payment of corporate debts [West Texas R. & D. Co. v. Commissioner, 68 F.(2d) 77, 80 (C.C.A. 10)].

██ The reorganization provisions (section 112 (a) and (d) of the Revenue Act of 1928 reveal (as pertinent here) the following: First, that the provisions that no gain or loss is recognized from certain exchanges do not grant an exemption and are not so intended but operate only as a postponement of the tax until gain is clearly realized by a future sale or exchange amounting thereto; second, that where money and/or property, other than stock or securities in the new reorganized company or in a participating corporation are received, a gain from the exchange is recognized as realized but not in excess of such money and property; third, that the provisions as to distribution to stockholders of such money and/or property had as a main purpose to prevent tax evasions through distribution as capital gains what was in effect dividends out of earnings—thus avoiding higher surtax rates. These three conclusions as to the construction of the statute are based on the wording of the act and the clarifying Congressional Reports.[2]

---

[2] The provisions of the Act of 1928 here pertinent are essentially the same as in the Revenue Act of 1924 (June 2, 1924, 43 Stat. 253), though the section numbers differ. The Committee Reports upon the Act of 1924 are revealing and pertinent. The reorganization provisions in that act are mostly in section 203 with related matters in sections 201 (c, d) and 204(a) (6–9). Extracts from these reports are as follows:

"Changes Designed to Prevent the Avoidance of the Income Tax.

"Consistent with the principle of imposing an income tax which can be collected, a tax which is an actuality and not a pretense, the committee recommends certain amendments to the income tax law to stop the methods of avoidance which are now being commonly availed of by taxpayers. * * *

"(2) The provisions of the reorganization section have been rewritten to pre-

Applying the above principles of law and the three above conclusions to the situation here, there results the following: (a) Respondent received, along with 18,000 shares of stock in the Grand Union Company, $426,842.52 in cash; (b) this cash, if undistributed by respondent to its stockholders, would have constituted a realization upon the exchange to that amount and, therefore, would be subject to taxation against it as gain in so far as it constituted a capital gain; (c) if this entire

vent the use of the section to escape proper taxation by increasing the basis for depreciation or depletion or by increasing the basis for determining gain or loss from the sale of assets transferred in connection with a reorganization or by distributing as capital gains what are in effect dividends out of earnings." (H.R. No. 179, pp. 6 and 7 and 44; S.R. #398, p. 7).

"Section 203(d):

"(1) Paragraph (1) of Subdivision (d) corresponds to section 202 (e) of the existing law as amended by the act of March 4, 1923, and provides that where 'boot' is given in connection with an exchange which would otherwise be tax free, the gain from the exchange shall be recognized, but in an amount not in excess of the amount of the money or other 'boot.'

"(2) There is no provision of the existing law which corresponds to paragraph (2) of subdivision (d). This subdivision provides that any amount distributed by a corporation in connection with a reorganization which has the effect of a taxable dividend shall be taxed as a dividend and not as a taxable gain.

"The necessity for this provision may best be shown by an example: Corporation A has capital stock of $100,000, and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributes the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.

"On the other hand, corporation A may organize corporation B, to which it transfers all its assets, the consideration for the transfer being the issuance by B of all its stock and $50,000 in cash to the stockholders of corporation A in exchange for their stock in corporation A. Under the existing law, the $50,000 distributed with the stock of corporation B would be taxed, not as a dividend, but as a capital gain, subject only to the 12½ per cent. rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,-000 earnings and profits. If dividends are to be subject to the full surtax rates, then such an amount so distributed should also be subject to the surtax rates and not to the 12½ per cent. rate on capital gain. Here again this provision prevents evasions.

"Section 203(e):

"There is no provision of the existing law which corresponds to subdivision (e) of the bill, nor has the Treasury Department ever ruled officially on the type of case covered by that subdivision. The subdivision provides that if a corporation in connection with a reorganization transfers its assets to another corporation, a party to the reorganization, for stock and securities of the same corporation and cash, then no gain or loss to the transferor is recognized, if it distributes the cash to its stockholders. But if the selling corporation fails to distribute the cash to its stockholders then the gain or loss is to be recognized. In other words, if the corporation which sells its assets in connection with the reorganization acts merely as a conduit in passing the proceeds of the sale on to its stockholders, no gain to the corporation is to be recognized, but if it retains all or any of the proceeds with the result that the transaction is in substance a real sale, then all or a part of the gain shall be recognized." (H.R. #179, pp. 14 and 52; S.R. #398, p. 15).

"Basis for Determining Gain or Loss.

"Section 204:

"(1) There is no provision in the existing law which corresponds to paragraph (3). This paragraph applies the same principles to transfers to a trustee as is applied in paragraph (2) to gifts, and provides that where property was acquired after December 31, 1920, by a transfer in trust, the basis for determining the gain or loss from its sale shall be the same as it would be in the hands of the grantor.

"(2) Paragraph (6) corresponds to section 202(d)(1) of the existing law. The general theory of this section is that where no gain or loss is recognized as resulting from an exchange, the new property received shall, for purposes of determining gain or loss from a subsequent sale and for depreciation and depletion, be considered as taking the place of the old property given up in connection with the exchange. The provisions of section 203 of the bill that no gain or loss is recognized from certain exchanges do not grant an exemption and are not so intended. These provisions are based upon the theory that the types of exchanges specified in section 203 are merely changes in form and not in substance, and consequently should not be considered as affecting a realization of income at the

amount be distributed absolutely to the stockholders, they and not it would be subject to such realization and to taxation thereon, under the applicable provisions of the act, as upon individual incomes; (d) respondent received an advantage from the acquisition of this money from the Grand Union in that it secured the payment of its indebtedness in the sum of $106,471.73; (e) the payment of this indebtedness by the stockholders was a condition attached to and governing the distribution[3]; (f) such payment was thus assumed and was made; (g) such payment reduced, by $106,471.73, the amount realized by the stockholders for their own benefit on the distribution; (h) respondent received the full benefit of this payment to the same extent as though it had retained that amount from distribution and applied it to payment of such indebtedness; (i) this sum cannot be regarded as gain to the stockholders and they could not be taxed individually therefor; (j) this was not a genuine distribution of this sum but a circuitous retention and application thereof by the respondent; (k) it is taxable to the respondent.

"Where the legal effect of a transaction fits the plain letter of the statute, the tax is held payable, unless there is clearly revealed in the act itself or in its history a definite intention to exclude such transactions from the operation of its applicable language" (Helvering v. Midland Mutual Life Ins. Co., 57 S.Ct. 423, 426, 81 L.Ed. —— [Feb. 15, 1937]) and (from the same opinion) "There is nothing unfamiliar in taxing on the basis of the legal effect of a transaction."

The result is that the determination of the Board must be reversed and the cause remanded to the Board with instructions to set aside the order here under review and to proceed to ascertain the amount, if any, of gain by respondent from the transaction with the Grand Union and of the tax due (up to $106,471.73) upon such gain.

time of the exchange. In other words, these provisions result not in an exemption from tax but in a postponement of tax until the gain is realized by a pure sale or by such an exchange as amounts to a pure sale. It follows, therefore, that in the case of such an exchange the property received should be considered as taking the place of the property exchanged. If in connection with the exchange money is received which is not taxed, obviously the basis at which the old property is carried on the books of the taxpayer should be reduced to that extent, since the taxpayer has in part received a return of capital. But if money is received in connection with the exchange and the money is taxed, it is equally obvious that the basis of the old property should not be affected." (H.R. #179, pp. 16 and 54; S.R. 398, p. 17).

[3] The resolution authorizing the distribution provided that this money should be distributed ratably to the stockholders "upon the assumption by the stockholders of all the corporate debts of Minnesota Tea Company" and the Board of Directors of respondent were "hereby authorized and directed to so distribute the said moneys as aforesaid" and to enter into a written agreement with the stockholders "whereby said stockholders, in consideration of such distribution * * * to pay all the corporate debts of the Minnesota Tea Company * * *."