## UNITED STATES v. HENDLER.
### No. 4202.

Circuit Court of Appeals, Fourth Circuit.
Aug. 6, 1937.

Arnold Raum, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for the United States.

William R. Semans and Randolph Barton, Jr., both of Baltimore, Md. (Joseph Addison, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The United States has appealed from the decision of the District Court holding that under section 112 of the Revenue Act of 1928 (26 U.S.C.A. § 112 and note) the computation of the taxable gain of the Hendler Creamery Company, Inc., result-

ing from the performance of a reorganization agreement with the Borden Company, should not take account of the bonded debt of the Hendler Company which was assumed by the Borden Company.

On June 21, 1929, in conformity with a "reorganization agreement" of May 21, 1929, the Hendler Company transferred all of its assets to the Borden Company in exchange for 105,306 shares of the latter's stock, $43,421.87 in cash, and the assumption by the Borden Company of all of the outstanding liabilities of the Hendler Company, consisting of $501,000 first mortgage bonds, current bank loans of $1,050,000, and merchandise accounts of $130,410.78. As a result of the transaction, the Hendler Company made a total calculated profit of $6,608,713.65 based on the current market price of the Borden stock. After the transaction the Hendler Company discontinued business, filed its income tax return for 1929, and dissolved.

The Hendler bonds were subject to redemption on any interest date at 107½. In accordance with an understanding which preceded the agreement of May 21, 1929, the board of directors of the Hendler Company resolved on May 15, 1929, to call the bonds for redemption on July 1, 1929. The Borden Company, through the purchase of some of the bonds and the redemption of the rest, performed its promise to assume the payment of the bonds at a total cost to it of $534,297.40. This sum did not pass through the Hendler Company but was paid directly to the bondholders. The Hendler Company did not include it in its income tax return for 1929 nor any part of the profit realized in the reorganization. The Commissioner reached the determination that while the total profit on the exchange was not taxable, the item of $534,297.40 was taxable and made a deficiency assessment of $58,772.72 with interest of $10,781.97, which was paid by L. Manuel Hendler, as transferee. The present suit was filed to recover these amounts after a claim for refund had been denied. The District Court ordered the refund, finding a verdict for $62,145.89 which represented the amount of the plaintiff's claim less an offset based on circumstances not involved in the pending case.

Section 112 of the Revenue Act of 1928, 45 Stat. 791, 816 (26 U.S.C.A. § 112 and note), provides in part as follows:

"§ 112. *Recognition of gain or loss*

"(a) *General rule.* Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind—* * *

"(4) *Same.* [*Stock for Stock Reorganization*]—*Gain of corporation.* No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. * * *

"(d) *Same.* [*Gain from Exchanges not Solely in Kind*]—*Gain of corporation.* If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

"(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

"(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which it not so distributed."

The contention of the United States is that under section 112(a) of the statute the entire amount of the gain or loss upon the sale or exchange of property is recognized in computing the income tax, unless the transaction falls within one of the exceptions enumerated in the section; and that the only exceptions relied upon by the taxpayer, to wit, section 112(b) (4) and section 112 (d), are not applicable to the facts of the case. It is not denied that there was a "reorganization" as defined in section 112 (i), 45 Stat. 816 (26 U.S.C.A. § 112 and note); see Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284; Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L. Ed. 291; but it is said that the taxpayer did not exchange its property in pursuance of a plan of reorganization solely for stock or securities in the Borden Company within the terms of section 112(b) (4), but also

received $43,421.87 in cash and an assumption of the taxpayer's liability which included the bonded indebtedness discharged at a cost of $534,297.40; and it is contended that this assumption of indebtedness was not money or property within the true construction of section 112(d), or if it was money or property, it was not distributed in pursuance of the plan of reorganization within the terms of the section. Hence it is said that the item of $534,297.40 should be added to the taxable income.

At the outset we are assailed by the doubts aroused by the failure of the government to press its argument to the conclusion which would seem to follow if its premises, based upon a literal interpretation of the language, are sound. If the assumption of the bonded indebtedness did not constitute money or property, but nevertheless represented taxable value received by the taxpayer, it would seem that the transaction was not covered by the literal terms of either section 112(b) (4) or section 112(d), and that therefore the entire profit of $6,608,713.85 was taxable under section 112(a) of the statute; and on the other hand, if such assumption did constitute money or property not distributed under section 112(d), manifestly the assumption of the current bank loans in the amount of $1,050,000 and of the merchandise accounts in the amount of $130,410.78 was of the same nature and these sums should have been added to the taxable profit. The omission of the Government in these respects is difficult to understand.

■ In our opinion, however, the decision of the District Court was correct. We do not question the rule that the payment of an obligation of a taxpayer by another person constitutes income to the taxpayer. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S.Ct. 499, 73 L.Ed. 918; United States v. Boston & M. R. R., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929; Gold & Stock Telegraph Co. v. Commissioner (C.C.A.) 83 F.(2d) 465; Houston Belt & Terminal Ry. Co. v. United States (C.C.A.) 250 F. 1; Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 62, 80 L.Ed. 3, 101 A.L.R. 391. And of course the assumption not only of bonded indebtedness but also of all other forms of indebtedness owing by a taxpayer must necessarily be taken into account in computing the taxpayer's profit in a reorganization. However, it does not follow that the amount of indebtedness assumed is taxable as profit at the time that the reorganization is effected; and it is significant that the usual practice of the Commissioner has been quite to the contrary.

■ The sections of the act in question must be construed in view of the purposes which they were intended to effect. It is well known that the purpose was to provide for the exemption from taxation at the time of a business reorganization of the gains involved therein to the extent specified in the statute in order to remove impediments to corporate readjustments and also to prevent the recognition of fictitious gains or losses. The history of the legislation and the committee reports in Congress clearly manifest this legislative intention. C. H. Mead Coal Co. v. Commissioner (C.C.A.) 72 F.(2d) 22, 27, 28; Minnesota Tea Co. v. Commissioner (C.C.A.) 76 F.(2d) 797, 802. Baar & Morris on Hidden Taxes & Corporate Reorganization, p. 244. The result is to defer the taxation of such gains until they are subsequently realized by the corporation grantor or its stockholders through the liquidation of the securities or property received.

■ So it was provided in effect that no gain should be recognized in the exchange of property solely for stock or securities in the transferee corporation; or if the property received in exchange should also include property or money other than stock or securities, the gain should be recognized only to the extent that such other property or money was not distributed in pursuance of the plan of reorganization. Now it seems to us, bearing in mind the general purpose of the statute, that it was not the intention of Congress to recognize for immediate taxation the gain derived in a corporate reorganization to the extent it should consist of an assumption of the debts of the corporate grantor. Such an assumption is undoubtedly an asset of value and may fairly be called property in the broad sense; but the money spent in the performance of the promise passes to creditors and does not come into the possession of the debtor corporation or its stockholders. It reduces the debts and therefore frees the assets from the claims of creditors so that they may be lawfully distributed amongst the stockholders or otherwise disposed of; but it does not increase in their hands the assets whose liquidation brings about the actual enjoyment of the realized profit. Therefore the recognition of the gain, to the extent of the amount of the debt assumed, would not serve the statutory purpose, but on the contrary would tend to defeat it. It is a matter of common knowledge that a promise by the grantee to assume

the debts of the grantor corporation is a customary incident of reorganization agreements, and where the transaction yields a profit to the grantor, taxable gain up to the amount of the assumed debt would accrue in the current year if the present contention of the Commissioner is correct, whether or not at that time the corporation or its stockholders had actually realized the profit in the transaction.

It seems obvious that Congress in referring to the receipt of stock or securities in section 112(b) (4) and to the receipt of money and other property in section 112(d) had in mind the sort of property that is susceptible of distribution among stockholders. Indeed, this is part of the argument of the government which asserts that a distribution in reorganization generally contemplates a distribution among stockholders and that it would be a distortion of language to misconstrue the word "distribute" to mean the payment of creditors. But it does not follow, as the government contends, that when the taxpayer secures an assumption of its debts in addition to stock and securities or distributable property, it is not entitled to the exemption claimed. Congress has adopted the realistic conception that the substantial value which a corporation owns is the equity in its corporate property—that is, the value of its assets after provision has been made for the payment of its debts—that what the grantee acquires in a corporate reorganization is this equity, and that its assumption of liabilities is merely the means by which it is enabled to acquire a good title to the grantor's property. If this viewpoint is kept in mind, it is clear that the grantor in a reorganization agreement receives nothing from the assumption of its debts by the grantee that prevents it from claiming an exemption under either of the cited sections of the statute.

It must not be supposed that the gain derived by the corporate grantor from the assumption of its debts will entirely escape taxation through this construction of the act. Manifestly the price paid for the corporate assets by the grantee includes both the value which passes to the corporation or its stockholders and that which passes to its creditors; and the entire profit will be recognized, when upon the ultimate liquidation of the assets actually received by the corporation or its stockholders a comparison is made between that which was originally put into the venture and that which has been finally taken out.

We have been referred to the decisions in Helvering v. Minnesota Tea Co. (C.C.A.) 89 F.(2d) 711, and Liquidating Co. v. Commissioner, 33 B.T.A. 1173; but in so far as they are at variance with the views herein expressed, we are constrained to disagree.

Affirmed.