COMMISSIONER OF INTERNAL REVE-
NUE v. WESTERN POWER COR-
PORATION.

No. 168.

Circuit Court of Appeals. Second Circuit.

Feb. 7, 1938.

564

James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

Edward H. Green and John F. Dooling, Jr., both of New York City (Sullivan & Cromwell, of New York City, of counsel), for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

This is a petition by the Commissioner of Internal Revenue to review a determination of the Board of Tax Appeals holding that there was no deficiency in the income taxes of the respondent Western Power Corporation for the year 1930. The Commissioner claims a deficiency in the amount of $8,295,605.39 and interest. We hold that the decision of the Board of Tax Appeals was right and should be affirmed.

The principal question involved is whether the transfer by the taxpayer of substantially all of its assets, consisting of more than a majority of the voting and outstanding stock of each of its three subsidiary public utility companies, to Pacific Gas & Electric Company in exchange for 1,825,000 shares of the common stock of the latter, constituted a "reorganization" or nontaxable exchange within the meaning of section 112 of the Revenue Act of 1928, 45 Stat. 816, 26 U.S.C.A. § 112 and note.

The provisions of the statute, section 112(i) (1), 26 U.S.C.A. § 112 note, defining the meaning of "reorganization" are as follows:

"§ 112. * * *

"(i) *Definition of Reorganization.* As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected."

Counsel for the Commissioner argue that the transfer to the Pacific, an operating company, by the taxpayer, a holding company, without an acquisition by the latter of a controlling interest in Pacific, did not constitute a reorganization under section 112. But, in view of the construction placed upon that section by the Supreme Court, we think it evident that the exchange of securities between the taxpayer and the Pacific did amount to a "reor-

ganization." Pacific acquired a majority of the voting stock of the three subsidiary companies of the taxpayer, and thus became possessed of substantially all the properties of the latter which consisted almost entirely of the stocks of the subsidiaries. The taxpayer acquired a substantial interest in the purchaser.

In Helvering v. Minnesota Tea Co., 296 U.S. 378, 383, 384, 386, 56 S.Ct. 269, 272, 80 L.Ed. 284, the Commissioner contended that, because clause (A) of section 112(i) (1) defines a "reorganization" as a "merger or consolidation," and then proceeds to amplify the strict meaning of those words, the clause should be so limited as to include only transactions nearly akin to technical mergers or consolidations. The Commissioner also contended that under clause (B), where there is a transfer by a corporation of all or a part of its assets to another corporation, the transferor must obtain control of the transferee in order to effect a reorganization, and argued that this requirement of control of the transferee furnishes a further reason for restricting the meaning of clause (A) so as to prevent overlapping. But in Helvering v. Minnesota Tea Co., supra, the taxpayer had transferred substantially all of its assets to Grand Union Company in return for cash and voting trust certificates in 1,800 shares of common stock of Grand Union which amounted to only 7½ per cent. of the outstanding common stock of the purchaser. Justice McReynolds, in discussing clauses (A) and (B), said:

"We find nothing in the history or words employed which indicates an intention to modify the evident meaning of (A) by what appears in (B). Both can have effect, and if one does somewhat overlap the other the taxpayer should not be denied, for that reason, what one paragraph clearly grants him. * * *

"The transaction * * * was no sale, but partook of the nature of a reorganization, in that the seller acquired a definite and substantial interest in the purchaser."

This was said in spite of the fact that the relationship of the taxpayer to the assets conveyed had been substantially changed and the transferor corporation, as in the present case, was not dissolved under the reorganization plan. See, also, Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; G. & K. Manufac-

turing Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291. When construing clause (A) of section 934 (h) (1) of the Revenue Act of 1926 in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 469, 470, 53 S.Ct. 257, 260, 77 L.Ed. 428, the court said: "The words within the parenthesis may not be disregarded. They expand the meaning of 'merger' or 'consolidation' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation."

The decision in Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289, affirming Watts v. Commissioner, 2 Cir., 75 F.2d 981, is also in point. There the taxpayer, when owning all the stock of Ferro Alloys Corporation, transferred it to Vanadium Corporation in exchange for stock of the latter and for certain bonds of Ferro Alloys guaranteed by Vanadium. The transaction was held a reorganization in which no gain should be recognized.

Not only did the taxpayer transfer substantially all its properties to Pacific in exchange for stock of the latter in pursuance of a plan of reorganization, but it also exchanged a majority of the voting stock of its three subsidiaries, parties to the reorganization, for such Pacific stock. The transaction, therefore, falls not only within the second alternative of the parenthesis contained in clause (A) supra, which we have already discussed, but within the first alternative because it involves: "The acquisition by one corporation of at least a majority of the voting stock * * * of another corporation."

The very arguments employed by the Commissioner before us were made in Helvering v. Minnesota Tea Co. and Helvering v. Watts without avail, and everything presented on his behalf on the present appeal has been so completely answered in the convincing brief and argument of the learned counsel for the taxpayer that we can feel no doubt about the correctness of the Board's decision.

■ We think counsel were right in their contention that: "* * * there is no escape from the conclusion that the Supreme Court has definitely settled the following proposition: There is a reorganization within the statute when (a) a corpora-

tion transfers substantially all of its assets to another corporation, and (b) receives therefor securities of the buyer which give it a definite interest in the buyer, and (c) those securities represent a substantial and material part of the value of the thing transferred." (Respondent's brief, p. 21.)

The Commissioner makes the further contention that he properly included $286,-152.83 in the taxpayer's income and that under any circumstances there should be a redetermination of the latter's income taxes so as to assess a tax upon the foregoing item. The contention is unwarranted. The item represents interest upon the indebtedness to the taxpayer of the three subsidiaries between January 31, 1930, and May 1, 1930. The taxpayer was under an agreement with Pacific to cancel such indebtedness as of January 31, 1930. Accordingly, no interest for that period was due. Although the interest between the dates was accrued on the books of the taxpayer, it never was received by the latter, was accrued by mistake, and was canceled upon the demand of Pacific who allowed the taxpayer only interest between May 1 and June 12—interest for that period being allowed because the closing date set at May 1 was adjourned to June 12 at Pacific's request. These facts were found by the Board, whose findings are binding upon us.

Order affirmed.