PHILIP J. COGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PATRICK H. COGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN F. COGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 77703, 77704, 77705. Promulgated October 12, 1937.

*Frederick L. Pearce, Esq.,* for the petitioners.
*Dean P. Kimball, Esq.,* for the respondent.

OPINION.

HILL: These are consolidated proceedings for the redetermination of deficiencies in income tax as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 77703 | 1931 | $21,477.06 |
| 77704 | 1931 | 20,310.39 |
| 77705 | 1931 | 19,325.03 |

The question for decision is whether the organization of the new corporation in 1931 by an old corporation of which petitioners were the sole stockholders, and certain transactions in connection therewith, constituted a "reorganization" within the meaning of that term as defined in section 112 (i) of the Revenue Act of 1928, reading in pertinent part as follows:

(1) The term "reorganization" means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. * * *

The petitioners are three brothers, who have been engaged for many years in the contracting business in New York. In 1931 they comprised the board of directors, officers, and stockholders of the J. F. Cogan Co., a New York corporation. That company was organized in 1909 to carry on a general contracting business, constructing principally bridges, subways, and sewers. There were two other stockholders of the corporation originally, but they were bought out about 1916, and since that time through 1931 the outstanding capital stock has been owned one-third by each of the petitioners herein.

The principal contracts of the J. F. Cogan Co. prior to 1931 were on two subways in New York City, one on the Central Park West subway for a face amount of $4,500,000, started in the spring of 1925 and finished late in 1928 or early in 1929, and the second on the North Boulevard subway in Long Island City, Queens, for a face amount of $7,500,000, started in the latter part of 1928 and finished in 1931. Many claims and suits arising out of those contracts were filed against the Cogan Co., principally alleging damages due to settlement of buildings along the streets in the vicinity of the subways. The face amount of the claims pending in 1931 aggregated about $500,000, for which suits were filed. Such claims were more numerous and for larger amounts in 1930–1931 than in previous years.

The minutes of a special meeting of the board of directors of the J. F. Cogan Co., held on June 8, 1931, disclosed the following proceedings:

The chairman stated the purpose of the meeting, namely:

To discuss the advisability of a reorganization by the organization of an-

other corporation, to which would be transferred such portion of the assets of this company as was deemed necessary for the operation of the new company.

On motion duly made and seconded, the following resolution was unanimously adopted:

Resolved, that in view of the risk of accidents while fulfilling contracts, and the liability of heavy damage suits, out of all proportion to the damages accruing, the Company proceed to reorganize by organizing a new corporation and transferring to this new corporation its holdings of New York City 4¼% bonds or corporate stock of a par value of $1,050,000 in exchange for the entire capital stock of the new corporation; and upon the receipt of said stock of the new corporation it be distributed to the stockholders of this corporation in proportion to their stock holdings, but without surrender by them of their stock in J. F. Cogan Company, contractors.

Thereafter, the new company was formed under the name of P. J. & P. Corporation, and its charter, which was filed with the Secretary of State of New York on July 16, 1931, included among others the power to purchase, sell, and otherwise deal in stocks, bonds, mortgages, notes, and other obligations and securities of corporations, either public or private, foreign or domestic, and to carry on a general engineering and construction business.

Pursuant to a written offer of the J. F. Cogan Co. dated August 18, 1931, the new company acquired on August 25, 1931, the bonds of the city of New York in the face amount of $1,050,000 and issued therefor all of its capital stock, consisting of 200 shares no par value, to the J. F. Cogan Co.

On August 27, 1931, the stock of the P. J. & P. Corporation was distributed by the J. F. Cogan Co. to its stockholders, each receiving one-third of such stock. Immediately after the distribution each of the petitioners herein owned one-third of the stock in the J. F. Cogan Co. and the P. J. & P. Corporation.

Under the terms of the subway contracts with the J. F. Cogan Co. the city of New York had the right to retain 15 percent of the company's monthly earnings. However, its bonds could be deposited with the city in lieu of the 15 percent otherwise retained and the contractor would then be entitled to receive 100 percent of the amount due monthly. After the bonds above mentioned were transferred to the P. J. & P. Corporation, it put up some $200,000 of the bonds with the city to release monthly payments to the J. F. Cogan Co.

At a special meeting of the stockholders of the P. J. & P Corporation, consisting of the petitioners herein, held on October 14, 1931, a resolution was adopted reading as follows:

Resolved, that the corporation be dissolved and the net assets of the company be distributed among the stockholders, and the officers of the corporation are hereby authorized and instructed to take any and all steps necessary to legally dissolve and liquidate the corporation.

On December 30, 1931, the board of directors of the P. J. & P. Corporation adopted a resolution authorizing the treasurer to trans-

fer to the stockholders the bonds held by the corporation, and on the same date the corporation was liquidated.

In their returns for 1931 petitioners treated the transactions hereinabove referred to as a reorganization, and the distribution of the P. J. & P. Corporation stock as in pursuance of the plan of reorganization. They treated the P. J. & P. Corporation stock as representing a continuance of their interest in the assets of the J. F. Cogan Co. for the purpose of determining the holding period of two years as the basis of new stock for computing capital net gain. Accordingly, each petitioner reported in his return for 1931 a capital net gain of $288,483.89 upon the liquidation of the P. J. & P. Corporation, and did not report any amount as gain derived from the distribution of the stock of the latter corporation by the J. F. Cogan Co.

Respondent in the deficiency notice held that the transaction in 1931 in connection with the organization of P. J. & P. Corporation did not constitute a reorganization within the meaning of the statute and the distribution of its stock to the stockholders of the J. F. Cogan Co. was not, therefore, such a distribution as was contemplated by section 112 (g) of the Revenue Act of 1928.[1] Respondent further held that no capital gain resulted to petitioners from the liquidation of the P. J. & P. Corporation, but that the distribution of its stock represented an ordinary dividend of the J. F. Cogan Co., taxable to each petitioner in the amount of $291,500.

Respondent concedes that the transaction by which the J. F. Cogan Co. transferred a part of its assets to the newly organized P. J. & P. Corporation, the transferor or its stockholders after such transfer being in control of the P. J. & P. Corporation, constituted a reorganization within the literal wording of the statute, but respondent contends that there was in fact no reorganization of the business of the J. F. Cogan Co.; that what was done constituted a mere device to disguise what was in reality the payment of an ordinary dividend under the masquerade of a reorganization, citing in support of its contention *Gregory* v. *Helvering*, 293 U. S. 465.

The salient facts of the instant proceedings are strikingly similar to those of the *Gregory* case. There the petitioner was the sole stockholder of a corporation which owned 1,000 shares of the capital stock of another corporation. She caused a new corporation to be organized, to which three days later the 1,000 shares of stock referred to were transferred in exchange for its capital stock, which

---

[1] (g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

was issued to the petitioner. Shortly thereafter, without the transaction of any other business, the new corporation was dissolved and the 1,000 shares of stock distributed to petitioner, who sold them at a large profit, which she reported for taxation as capital net gain, effecting a material saving in tax.

Here, petitioners were the sole stockholders of a corporation which owned something more than $1,000,000 face value of New York City bonds. They caused a new corporation to be organized, to which the bonds were transferred in exchange for its capital stock. The stock was then distributed to petitioners, and shortly thereafter, without the transaction of any other business of substantial character, the new corporation was dissolved and the New York City bonds distributed to petitioners, who reported the profit derived upon the liquidation as capital net gain, thus effecting a material saving in tax.

In these proceedings, as in the *Gregory* case, the issue presented is resolved in its last analysis into the question whether the things done constituted a "reorganization" within the contemplation of the taxing statute. In the cited case the question was answered in the negative, the court in its opinion saying:

> When subdivision (B) speaks of a transfer of assets by one corporation to another it means a transfer made "in pursuance of a plan of reorganization" (Section 112 (g)) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here. Putting aside, then, the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred, what do we find? Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.

But petitioners strongly argue here that their corporation was not organized merely for the purpose of effecting a transfer of the New York City bonds to them in such manner as to reduce their tax liability. They say the corporation was organized for a legitimate business purpose; that in order to avoid as far as possible the hazard of claims and suits for damages, which had greatly increased in 1930–1931, they desired to conduct their contracting business through the medium of two corporations, so that they would not have all their "eggs in one basket."

We are not impressed by this argument in the face of the undisputed facts that the new corporation never performed any business function in connection with the contracting business formerly carried on by J. F. Cogan Co. Aside from the collection of interest on the New York City bonds during the period they were held by the new company, and the loan of about $200,000 of the bonds to the old company, it engaged in no business activities whatever so far as the record discloses. We are told that one of its intended primary functions was to engage in the construction business, yet during its existence the P. J. & P. Corporation submitted no bids and apparently made no effort to obtain construction contracts, although throughout the year 1931 the J. F. Cogan Co. continued to bid on new contracts.

The new corporation was organized on July 16, 1931, and on October 14 petitioners, acting as the sole stockholders, adopted a resolution of dissolution, pursuant to which the corporation was dissolved on the following December 30.

If the reason for the organization of the new corporation was to reduce the risk of losses on account of damage suits and claims, as indicated in the resolution of June 8, 1931, pursuant to which the P. J. & P. Corporation purportedly was organized, it is not shown that there had been any change in the situation in that respect either at the time the resolution to dissolve was adopted or at the date of dissolution.

No reason for such action was indicated in the resolution to dissolve the new corporation, but at the hearing petitioner John F. Cogan testified that this resolution and the subsequent dissolution resulted from his desire to obtain his share of the New York City bonds, so that he could distribute them among his children prior to his death. Disregarding the fact that he could have achieved substantially the same result by distributing among his children the stock which he owned in the P. J. & P. Corporation, it does not appear from the testimony of this witness that he carried out such expressed intention after he obtained his share of the bonds upon liquidation of the corporation. Some six months thereafter he sold $25,000 of the bonds, and about October 1934 he "sold" $40,000 worth of them as they were called by the city. It is not shown that he ever distributed any of the bonds among his children.

In contradiction of the claimed intentions of the petitioners in connection with the organization of the P. J. & P. Corporation, the fact indisputably appears that it was never used to effect any substantial reorganization of the *business* of the J. F. Cogan Co.; indeed the only function of importance which it ever performed was to enable petitioners to acquire the New York City bonds in the

form of a liquidating dividend, taxable as capital net gain, instead of as an ordinary dividend from the old company, subject to surtax.

Respondent has determined that the transactions in question did not constitute a "reorganization" within the purview of the taxing statute, and has computed the deficiencies on the basis that the stock of the P. J. & P. Corporation, when distributed to petitioners, constituted an ordinary dividend of J. F. Cogan Co. to the extent of the fair market value of the New York City bonds, namely, $874,500. The burden is upon the petitioners to show that respondent's determinations are erroneous, and this, we think, they have failed to do. The deficiencies determined by respondent are approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*