### HENDEE v. COMMISSIONER OF INTERNAL REVENUE.

No. 6463.

Circuit Court of Appeals, Seventh Circuit.

Aug. 10, 1938.

R. S. Doyle and George D. Brabson, both of Washington, D. C., and Louis Quarles and Maxwell H. Herriott, both of Milwaukee, Wis., for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Ellis N. Slack, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This petition for review of a decision of the Board of Tax Appeals presents the question whether or not a series of transactions whereby petitioner exchanged stock in Line Material Corporation, a manufacturing corporation, for stock in Hendee Investment Company, a family holding corporation, all of whose assets consisted of United States, state, and municipal securities, constituted a reorganization so that the gain realized thereon was not recognizable under section 112 of the Revenue Act of 1928.

The facts out of which the question arose were stipulated before the Board. Petitioner owned 1286.6 shares of stock in Line Material Company, a Wisconsin corporation, of which one Kyle owned or controlled sixty per cent of the stock. Kyle wished to reorganize the company, and as a step toward that end, wished to secure title or control to the minority stock. Petitioner had for some time considered selling his stock and severing his connection with the company in order to place his investment in something of a more conservative nature. In March, 1929, Kyle asked for an option on petitioner's stock at a cash price of $425 a share. Petitioner agreed to give the option provided Kyle would pay any tax which might accrue to him by reason of the sale, as well as the cash price of $425 a share. Kyle refused to do this but did consult his attorneys who advised that it would be possible to work out a plan whereby the tax could be deferred, and upon receipt of this advice petitioner gave the option. He also consulted Kyle's attorneys as to whether the plan would permit him to avoid any immediate tax and also have the benefits of a family corporation. The plan which was formulated had both these objectives in view.

Two new Delaware corporations were organized, the L. H. Company and the Hendee Investment Company. Petitioner, his wife and two children who also owned small stock interests in the Line Material Company all transferred their stock in that company to the L. H. Company receiving in exchange all the stock of the

latter company, whose officers thereupon negotiated a loan for $600,000 from the First National Bank with which to buy United States certificates of indebtedness. The Line Material stock and the United States securities were both held by the bank as collateral to secure the thirty-day note of the L. H. Company for the $600,-000 with which the securities had been purchased. Immediately after these transactions, the Board of Directors of the L. H. Company was authorized to transfer to the Hendee Investment Company the block of United States securities in exchange for all the capital stock of the latter company which was issued pro rata directly to the stockholders of the L. H. Company. Within a few days, the Line Material Company assumed the $600,000 note of the L. H. Company with accrued interest of $500 plus an over-draft of $12.-80. It then purchased from members of the Hendee family their stock in the L. H. Company paying cash for such stock in the amount of $6,642.20 arrived at by deducting the amount of the note and other liabilities, $600,782.97, from the value of the 1428.6 shares of Line Material stock at $425 a share ($607,155) plus a small cash balance in the bank of $270.17. Shortly thereafter the Line Material Company paid off the note, and the shares of its own stock which had been held as collateral were then delivered to it, and the United States

securities to the Hendee Company, thereby completing the plan whereby the Line Material Company had obtained the Hendee shares of its stock, and the Hendees had obtained the stock in the family holding corporation whose assets consisted of investment securities including largely United States, state and municipal obligations. Since that time there has been no distribution other than dividends from current income, and the Hendee Company has continued to act as a family holding corporation, changing its investments from time to time by purchase or sale, but its assets are still worth about $600,000, and still largely in government securities.

Upon these facts the Board found that there was no reorganization in accordance with the provisions of section 112, hence that the gain realized from the disposition of the shares in Line Material Company must be recognized as income for the year 1929 in which the transactions took place. It accordingly affirmed the deficiency found by the Commissioner.

Petitioner vigorously asserts the non-taxability of the series of transactions under the provisions of section 112 of the Revenue Act of 1928, 45 Stat. 816, 26 U.S. C.A. § 112, the applicable portions of which we set forth in the margin.[1] Apparently its principal reliance is placed upon the fact that a reorganization actually

[1] "Sec. 112. *Recognition of Gain or Loss.*

"(a) General rule.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind * * *

"(4) Same—Gain of Corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) Transfer to Corporation Controlled by Transferor.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest

in the property prior to the exchange. * * *

"(g) Distribution of stock on reorganization.—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without surrender by such shareholder of stock or securities in such corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

"(i) Definitions of reorganization.—As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, * * *.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both

did take place in the Line Material Company, and that since it was that reorganization which set into effect the chain of transactions here involved, he may take the benefit of it, regardless of the fact that when that reorganization took place, he was no longer a stockholder in it, and the only part that company had in the transactions was the purchase of L. H. Company's stock, and through it, control of its own stock, for cash, a small part of which went to petitioner, and the balance to the bank in payment of L. H. Company's note for $600,000. We think this was the equivalent of an outright purchase of the stock by the Line Material Company, and whatever it may have done in the way of reorganizing subsequently has no bearing on the questions here presented.

Did the conversion of petitioner's investment from a minority interest in a manufacturing corporation to a majority interest in a family holding corporation whose assets consisted of government securities constitute a corporate reorganization entitling him to defer the payment of tax on the gain? We think not. Petitioner contends that· the holding corporation is still doing business, contrary to the finding of the Board, which said of the L.H. Company and the Hendee Company, that "Neither transacted any substantial business, nor was it contemplated that either ever would do so." Hence he argues that his investment is still in "corporate solution," and that it cannot be said that he has realized any gain on it; that he has not withdrawn anything from his investment and is still in the same financial condition as he was before. But something more is needed than the retention of the investment in corporate solution. True it is that a reorganization does not require a continuance of the same actual ownership of substantially the same properties to bring it within the benefits of section 112. Helvering v. Minnesota Tea Company, 296. U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284. However, we interpret the statute to mean that there must be some continuity of business interest between the elements in the reorganization. One of the earlier cases involving the corresponding section of the Act of 1926, was that of Cortland Specialty Company v. Commissioner, 2 Cir., 60 F.2d 937. The Circuit Court of Appeals for

the Second Circuit there said: "Its purpose was to relieve those interested in corporations from profits taxes in cases where there was only a change in the corporate form in which business was conducted without an actual realization of any gain from an exchange of properties. When describing the kind of change in corporate structure that permits exemption from these taxes, section 203 does not disregard the necessity of continuity of interests under modified corporate forms. Such is the purpose of the word 'reorganization.' * * * In defining 'reorganization,' section 203 * * * gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption."

The same court reiterated that principle in a recent, case, Electrical Securities Corp. v. Commissioner, 2 Cir., 92 F.2d 593, 595: "The purpose of the section is apparent; it was meant to allow businesses to be reconstructed when the resulting interests were substantially unchanged; but it presupposed that the enterprises were in fact businesses; financial, commercial, industrial and the like. The avoidance * * * of taxes is not a business." That case was quite similar to the one before us. The court held that "the Diselin Corporation [analogous to the L. H. Company of the case at bar] was not a business corporation if tax avoidance or suspension is not a business; it had no other reason to exist, and it did nothing but act as a momentary conduit for the United Gas Improvement shares." See also Groman v. Commissioner, 302 U.S. 82, 654, 58 S.Ct. 108, 82 L.Ed. 63, where the Supreme Court again stated the purpose of the statute to provide a means for continuing the interest of stockholders of a corporation in substantial measure in a new or different one, and Bancker v. Commissioner, 76 F.2d 1, certiorari denied 296 U.S. 603, 56 S.Ct. 119, 80 L.Ed. 428, where the Circuit Court of Appeals for the Fifth Circuit said of the exchange of certain shares of common and preferred stock of the Coca-Cola Company for shares of common and preferred stock of the Coca-Cola International Corporation, that "it

---

corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

was a true conversion of his capital into a substantially different investment, and served to realize and to measure the gain he had from his original purchase of Coca-Cola stock."

Petitioner cites many cases in which the exemption was permitted under circumstances which he claims makes them authority for the allowance of the exemption to him. We think it can fairly be said of all of these cases that the securities obtained in exchange were in new, related corporations, parties to a real reorganization, where the business of the new corporation bore some relationship to that of the old.[2] This cannot be said of the exchanges here involved, where petitioner started out with 1286 shares of stock of Line Material Company, a manufacturing company, and ended up with most of the 100 shares of the Hendee Investment Company, a family holding corporation owning conservative investment securities. "For income tax purposes, the component steps of a single transaction cannot be treated separately." Bassick v. Commissioner, 2 Cir., 85 F.2d 8, 10. See, also, Cogan v. Commissioner, 97 F.2d 996, decided by the Circuit Court of Appeals for the Second Circuit, July 11, affirming 36 B.T.A. 639, on the authority of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.

The decision of the Board of Tax Appeals is affirmed.

[2] See Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284; Helvering v. Winston Bros. Co., 8 Cir., 76 F.2d 381; Ballwood Co. v. Commissioner, 3 Cir., 84 F.2d 733; Mead Coal Co. v. Commissioner, 4 Cir., 72 F.2d 22; Thurber v. Commissioner, 1 Cir., 84 F.2d 815. See, also, Nelson Co. v. Helver-

ing, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291; Commissioner v. Freund, reported in 384 C. C. H. Federal Tax Service, par. 9387.