**REX MFG. CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**
No. 6785.

Circuit Court of Appeals, Seventh Circuit.
Feb. 24, 1939.

326

Frank C. Olive and Forman D. Mc-Curdy, both of Indianapolis, Ind., for peti-·tioner.

James E. Murphy, James W. Morris, Sewall Key, and F. E. Youngman, all of Washington, D. C., for respondent.

Before EVANS, SPARKS, and KER-NER, Circuit Judges.

EVANS, Circuit Judge.

We are asked, in this appeal from the Board of Tax Appeals, for a decision holding that the transaction in controversy was a "reorganization" wherein fifty per cent of the corporate "interest or control" remained in the same persons so as to permit the new company to use the same basis for depreciation in its income tax reports as its corporate predecessor had used.

The Board assumed, but did not determine, that there was a "reorganization" within the meaning of Section 112 (i), 26 U.S.C.A. § 112 note, but held that there was no continuity of fifty per cent interest or control in the new company from the old, and therefore refused to adopt the old company's basis of valuation in determining depreciation. It therefore sustained the determination of a $338.33 deficiency income tax for the year 1932.

The statute involved provides (Sec. 113 (a) (7), 26 U.S.C.A. § 113 note) :

"If the property was acquired . * * * by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor * * *."

Petitioner was organized July 12, 1930, to succeed the Rex Manufacturing Company which had been incorporated in 1898, and had engaged successively in the businesses of manufacturing buggies, tops for open automobiles, and cabinets for electric refrigerators. It was in financial difficulty in January, 1930, although its books showed between $600,000 and $700,000 of assets and less than $200,000 of liabilities. It concluded that its difficulties could best be solved by bankruptcy proceedings and the formation of a successor corporation which would purchase the assets at the bankruptcy sale. The plan was perfected and carried out. The bankruptcy sale was held July 10, 1930, and a nominee purchased the property and thereafter conveyed it to the newly formed company. Creditors of the old company were paid twenty-five per cent in cash and seventy-five per cent in bonds of the new company.

The capital stock of the Rex Company consisted of 5,000 shares of common, and 5,000 shares of preferred stock. Forty-eight and two-tenths per cent thereof was held by four stockholders (C. C. Hull, George W. Ansted, Matthew R. Hull, and Nellie Ansted Huston) of the old company, which same four stockholders held 3,500 of the 4,500 shares of the new company. One stockholder of the old company, Catherine Ansted, who died intestate January 29, 1929, held 666.68 shares of the preferred, and a like number of shares of the common stock of the old company. If her holdings in the old company are included, the requisite fifty per cent would be achieved. Her estate was not settled until 1936 or 1937. She left three heirs (one of whom died in 1933) and the remaining two heirs were stockholders in both the old and new companies in their own right.

One of the stockholders who had 5,800 shares of stock in the old company held no stock in the new company, but purchased

$10,000 of bonds therein. The four above-named stockholders also bought $30,000 of bonds in the new company, which had a $250,000 bond issue.

The Commissioner took as his basis for depreciation, the value of the property in the hands of the petitioner, namely, $75,797.52. On this basis the depreciation deduction for 1932 was $6,182.69. Petitioner seeks a valuation basis of the property as in the hands of its predecessor, namely, $181,353.60. On this basis there would be a depreciation allowance of $13,903.77. There is no controversy over these amounts. Dispute is limited to the proper or legal basis for determining the depreciation.

It is the Commissioner's urge: (1) There was no statutory reorganization within Sec. 112 (i); (2) A fifty per cent interest did not remain in the same persons inasmuch as the interest of the deceased stockholder could not be considered as held by the deceased, or the estate's beneficiaries; (3) That in any event the record does not show that the basis of the transferor should not be increased or decreased on account of recognition of gain or loss.

■ *Continuity of Fifty Per Cent Interest.* This case presents a close arithmetical question as to whether the same persons held, although in varying amounts, an interest or control, aggregating 50 per cent in both the old and the new corporations. The Board found there was no such continuity, and in so finding rejected, on rehearing, the proffered evidence of the holding of 666.68 shares of both the common and preferred stock (of the old company) by Catherine Ansted who died before the refinancing in question, and whose stock constituted an asset of her estate, which was solvent without this asset, and whose estate remained unsettled during the entire period in controversy.

We are of the opinion that the Board erroneously rejected consideration of this factor, and we are also convinced that her estate's holding should have been included in determining the percentage held in the old company. Its inclusion established the existence of the fifty per cent interest necessary to a retention of the former depreciation basis.

■ Our conclusion is based on this reasoning: The 666.68 shares of preferred and of common stock in the old company, upon Mrs. Ansted's death, on January 29, 1929, vested *legally* in her administrator, her son,[1] who was a stockholder in both the new company and in the old, and vested *beneficially,* in her three children, equally, two of whom were stockholders in both the old and new companies. We need not determine therefore whether the stockholder's interest was legal or equitable in nature. In either case, there were here present, interests in sufficient shares, which added to the interests of the others, totaled over fifty per cent of the old company. As the shares held by these stockholders in the new company were 3,500 out of 4,500, there is left no room for fact controversy.

To exclude Mrs. Ansted's holding, because of the suspension of ownership due to probate, would be highly unjust and do violence to a fair construction of the revenue statute in question. "The theory underlying this provision is that the transfer is primarily a matter of form and not of substance * * *."[2] The instant plan of refinancing was one of form. It was a bona fide attempt to salvage a long-established concern, having good-will, but frozen assets, by means of a bankruptcy

---

[1] As to the holder of the legal interest in stock, Indiana holds that personal property passes to the heirs on the death of the ancestor subject to be divested instantly on the appointment of a personal administrator (Coldron v. Rhode, 7 Ind. 151, 153). A chattel interest passes to the administrator (Cunningham v. Baxley, 96 Ind. 367, 369). In the case of corporate stock, the Indiana statute specifically provides, Section 6-805, Burns' Indiana Stats.Ann.1933, that such stock shall not be sold by the administrator without court order, and shall be distributed under order of the court. Fletcher in his Cyclopedia of Corpora-

tions, Sec. 1667, states that the right to vote stock of a decedent is in his administrator. A collection of the authorities in 114 A.L.R. 1057, arrives at the same conclusion. In 13 American Jurisprudence, Sec. 494, "Corporations" it is stated, "Apart from statutory provisions however, it is clear that an executor, by virtue of his position as personal representative, has power to vote the stock of his testator at all meetings, and that until a settlement of the estate, the stock of a decedent belongs to his personal representative."

[2] Law of Federal Income Taxation, Paul and Mertens, Vol. II, Sec. 18.119.

**328**

sale and purchase by several of the same interests which theretofore were in control. The parties were evidently so intent on the ordinary legal and business aspects of the refinancing that they wholly ignored the income tax aspect of the matter. We must not overlook the fact that we are dealing with a practical matter (taxation) as applied to a good faith reorganization of a faltering, stumbling enterprise, and penalties are hardly in order when such good faith compliance with the revenue statute is present.

■■■■ The purpose of the reorganization provision in the tax statute was merely to maintain the *status quo* in tax matters where the change in corporate existence was not substantial. The statute defines as non-substantial, instances where fifty per cent of the interest or control in the corporation remains the same. The narrow, precise question before us then is this,— Does the change in ownership occasioned by the death of a stockholder constitute a change of "interest or control"? Our answer is, No.

As pointed out, however, this holding is not absolutely necessary to a decision in taxpayer's favor for the stockholder's death occurred in January, 1929,—over a year before the reorganization,—and her administrator or her heirs became at once the stockholders for the purpose of determining the existence of a continuance of a fifty per cent interest.

*Reorganization within Section 112 (i) of the Revenue Act.* Whether there was a reorganization within Section 112 (i) of the Revenue Act is a question which was not determined by the Board.[3] It was assumed for the purpose of the determination of the non-existence of a fifty per cent interest in the old and new companies.

Section 112 (i) of the Revenue Act of 1928, 45 Stat. 816, 26 U.S.C.A. § 112 note, provides:

"As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected. * * *

"(j) As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

Since we have concluded that a fifty per cent interest remained in the same stockholders in the old and new corporations, the question of reorganization within the meaning of the statute awaits determination.

■■■■ It must be conceded that there was no reorganization under subsection (1) (B) of Sec. 112 (i) which required an eighty per cent interest in the transferee corporation. The stockholders of the transferor owned 3,500 of the 4,500 shares of the transferee corporation, or only 77.78 per cent—less than three per cent of the requisite eighty per cent.

■■■■ Petitioner, however, claims that a reorganization was effected because of one or more of the other definitions of Section 112 (i).

We are of the opinion that there was a reorganization in the instant case within the definition of subsection (1) (A) of Section 112 (i), namely, "a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *."

---

3 "Since we are of the opinion that immediately after the transfer of assets here involved from the Rex Manufacturing Co. to petitioner an interest or control in such property of 50 per cent. or more did not remain in the same persons or any of them * * * we do not consider it necessary to decide whether a reorganization took place within the meaning of section 112 (i) (1) of the Act of 1928, but shall merely assume that it did for the purpose of this discussion."

This provision has been interpreted by the Supreme Court several times,[4] and by this court, to include cases similar to the one here presented. It was held in those cases that the phrase "merger or consolidation" is expanded by the words within the parenthesis to include refinancing plans other than *strict* mergers or consolidations.

It would serve no useful purpose to re-discuss the Supreme Court decisions. We content ourselves with a reference to the comment on the holdings which appears in the opinion of this court in Commissioner v. Kitselman, 7 Cir., 89 F.2d 458.

■ *Adjustment for Gain or Loss.* It is the Government's contention that petitioner has not shown that the basis of the property acquired in connection with the reorganization should not be increased or decreased on account of the recognition of gain or loss to the transferor. Sec. 113 (a) (7) provides that the "basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor * * *." Respondent points out that Section 112 (b) (4) provides, "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization." In this reorganization the new company gave stock, cash and bonds. The cash and bonds received were, pursuant to the plan, given to the creditors of the old company, cash 25 per cent and bonds 75 per cent.

While it is probable that no gain or loss was recognized to the Rex Manufacturing Company in this transaction, merely a reduction of, or liquidation of, indebtedness, it is a factual issue upon which we have not the full situation presented, and we deem it best that the issue be presented to the Board so that evidence might be taken and that issue first determined by the Board.

The order of the Board of Tax Appeals is reversed with directions to proceed in accordance with the views here expressed.

[4] Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284; Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; Bus & Transport Sec. Corp. v. Helvering, 296 U.S. 391, 56 S.Ct. 277, 80 L.Ed. 292; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291; Groman v. Commissioner, 302 U.S. 82, 58 S.Ct. 108, 82 L.Ed. 63. See also, Hendee v. Commissioner, 7 Cir., 98 F.2d 934, decided by this court August 10, 1938.