ELMER W. HARTZEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78769.   Promulgated August 23, 1939.

*D. W. Maxon, Esq.*, and *Cletus G. Roetzell, Esq.*, for the petitioner.
*Henderson A. Melville, Esq.*, for the respondent.

498

## OPINION.

TYSON: Petitioner contends that the issuance by the company direct to the older stockholders of all the new preferred stock and direct to the younger stockholders of all the new common stock, in lieu of the old common stock theretofore respectively held by them, constituted part of an entire transaction of exchange of such stock which was in pursuance of and embodied in a plan of reorganization, within the provisions of section 112 (b) (3) of the Revenue Act of 1928,[2] and that consequent gain or loss therefrom is not to be recognized.

Respondent concedes that there was a reorganization, through recapitalization, within section 112 (b) (3), *supra*, in so far as the reorganized company was authorized to issue the new preferred and new common stock for the outstanding old common stock on a pro

---

[2](b) *Exchanges solely in kind.*—

\*     \*     \*     \*     \*     \*     \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

rata basis. However, he contends that the reorganization was completed when the certificate of recapitalization was filed with the Secretary of State of Ohio authorizing the issuance of new preferred and common stock on a pro rata basis and that the new preferred and new common stock "were issued for all intents and purposes in accordance with the terms" of that certificate; that when thereafter the older stockholders received direct from the reorganized company all its preferred stock in lieu of the old common stock theretofore owned by them, and when the younger stockholders received direct from the company all its new common stock in lieu of the old common stock theretofore owned by them, such latter transactions were separate and independent ones and constituted no part of the reorganization, but constituted a taxable exchange of shares in the reorganized company between the stockholders in their individual capacities; and that the fact that the stockholders, by their individual agreement and by resolution in their formal special meeting, authorized and instructed the company to "do the exchanging for them does not change the picture."

The question then occurs whether the issue by the reorganized company of all its preferred stock direct to the older stockholders and of all its new common stock direct to the younger stockholders, in lieu of the old common stock held by such stockholders, was in pursuance of a plan of reorganization within the purview of section 112 (b) (3), *supra*, as contended by petitioner. We think it was. The plan was initiated by written agreement of all the individual stockholders with the definite object in view of finally placing in the ownership of the old stockholders all the preferred stock and in the ownership of the younger stockholders all the common stock for the sole purpose of giving the younger stockholders a greater voice in the control of the company because of certain contingencies which might arise in the future, i. e., that some of the older stockholders might die, their stock go to their children, and voting control of the company thus pass into the hands of people totally unfamiliar with its affairs, who might displace the younger stockholders from the positions they held with the company.

The plan so initiated by the individual stockholders embraced a provision for such direct issuance by the company of its new preferred stock to the older stockholders and of its new common stock to the younger stockholders. The plan as so initiated was adopted and approved by unanimous vote of all the stockholders in official meeting, through the medium of two resolutions passed at that meeting, the second of which, after expressly authorizing and instructing the proper officers of the company to issue all the preferred stock

direct to the older stockholders and all the common stock direct to the younger stockholders, stated further "and that the issuance of such stock" in that manner "shall be considered as a full compliance with the terms of said plan of reorganization."

It is true that the method adopted in the plan to effectuate the desired result, i. e., that when the whole plan was consummated the younger stockholders would own all the new common stock and the older stockholders would own all the new preferred stock, included what may be termed a "detour" (the provision for the pro rata distribution of the new stock). However, this "detour" was used because of real or feared impediments of the Ohio State Statutes with regard to what was requisite to be set out in a certificate of recapitalization. "Detours" similarly occasioned have not prevented this Board and the courts from holding that reorganizations in which "detours" occurred were, nevertheless, effectuated within the reorganization statutes. *Howard* v. *Commissioner*, 56 Fed. (2d) 781, affirming 20 B. T. A. 207; certiorari denied, 287 U. S. 619; *Thurber* v. *Commissioner*, 84 Fed. (2d) 815; *Mark Kleeden*, 38 B. T. A. 821; cf. *Gladys Bilicke*, 20 B. T. A. 784.

But respondent contends, in effect, that even if the plan of reorganization embraced all steps, as claimed by petitioner, including the direct issuance to the older stockholders of all the new preferred stock and the direct issuance of all the new common stock to the younger stockholders in lieu of pro rata distribution, yet, nevertheless, the reorganization did not come within the ambit of section 112 (b) (3), *supra*, because even in such event the interests of the various stockholders in the company, including the petitioner, after recapitalization was consummated, were different in that (a) the older stockholders received in exchange preferred for common stock and (b) the voting interests of the stockholders were so changed as to greatly increase the value of the stock of the younger stockholders, including petitioner, thus interrupting the continuity in interest of the stockholders necessary to a reorganization within the meaning of the applicable statute.

As to the receipt of new preferred for old common stock by the older stockholders, the following authorities establish the principle that such would not exclude the reorganization from the provisions of section 112 (b) (3), *supra*. *H. E. Muchnic, Administrator*, 29 B. T. A. 163; cf. *Burnham* v. *Commissioner*, 86 Fed. (2d) 776, affirming 33 B. T. A. 147; certiorari denied, 300 U. S. 683; and *L. & E. Stirn, Inc.*, 39 B. T. A. 143.

As to the contention that the younger stockholders had a greater voting power after the reorganization of the company and consequently the value of the new stock received by them was greater than the value of the old stock exchanged therefor, it is unnecessary to

say more than that they, as well as the older stockholders, acquired through their new stock a definite, substantial, and continuing interest in the reorganized company. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Helvering* v. *Watts*, 296 U. S. 387; *G. & K. Manufacturing Co.* v. *Helvering*, 296 U. S. 389; and *Miller* v. *Commissioner*, 84 Fed. (2d) 415. Cf. *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; and *Independent Oil Co.*, 35 B. T. A. 32.

We conclude that the respondent erred in the respects stated in petitioner's assignment of errors Nos. (1) and (2) and accordingly hold that the exchange here involved, by petitioner of his old stock in the Hardware & Supply Co. for new stock in that company after its reorganization, did not result in recognizable gain by the petitioner.

There was much testimony as to the value of the new preferred and common stock received by the various stockholders as a result of the reorganization of the Hardware & Supply Co. However, our conclusion that the exchange of stock was one in which gain is not recognizable obviates the necessity of our making findings as to such values and of deciding the issue presented by petitioner's assignment of error No. (3).

*Decision will be entered under Rule 50.*