ROBERT CAMPBELL, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15998, 15999, 16000, 16001, 16002, 16003, 21392, 21393, 21394, 21395, 21396, 21397. Promulgated September 28, 1950.

*Lee W. Eckels, Esq.,* for the petitioners.
*Francis X. Gallagher, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Andrew H. Campbell; Joseph E. Campbell; Earl F. Reed; Robert Campbell Trust No. 1, Transferee, Peoples-First National Bank & Trust Co., Successor Trustee; Robert Campbell Trust No. 2, Transferee, Peoples-First National Bank & Trust Co., Successor Trustee.

## OPINION.

OPPER, *Judge:* Two concepts of reorganizations and other section 112 transactions appear interchangeably and sometimes confusingly in the authorities. There is on the one hand the technical approach which searches the statutory terminology for literal compliance, and casts aside situations not within the precise language even though the same practical result could have been attained by a faithful adherence to the formalities. The crux of this view finds expression in the words of the opinion in *Weiss* v. *Stearn*, 265 U. S. 242, 254: "Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants."

At the same time, regard for the broad aim and objective of the legislation, rather than word-for-word adherence, accounts for adding to the expressed requirements such supplementary concerns as "business purpose," *Gregory* v. *Helvering*, 293 U. S. 465; "continuity of interest," *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; and "proprietary stake," *LeTulle* v. *Scofield*, 308 U. S. 415. Perhaps the two approaches can best be reconciled by considering that since our taxing system requires gains and losses ordinarily to be taken into account when they occur, the tax-postponing effects of section 112 will not become effective unless there is conformity with both the narrow technicalities and the broad and ultimate purpose.

Fortunately, we need not now face the problem since even if both are requisite, we find them here. Narrowly the question is, as it was in *Anheuser-Busch, Inc.*, 40 B. T. A. 1100, affd. (CCA–8), 115 Fed. (2d) 662, certiorari denied, 312 U. S. 699, whether the parent, Bethlehem, was a "party" to the reorganization, so that its stock could be received free from recognition of gain in the exchange by which petitioners acquired the Bethlehem shares in lieu of their holdings in Atlas.

The "plan" of reorganization did not, on this record, contemplate that any but Bethlehem should be the party to the reorganization, and we have so found as a fact. Although it was physically within the power of Bethlehem to transfer the Atlas stock when it became its owner, the evidence shows that not even Bethlehem, still less petitioners, contemplated it as a possible part of the plan. It was "an independent transaction" and not "an essential [or any] part of the plan." *United Light & Power Co.*, 38 B. T. A. 477, 485, affd. (CCA–7), 105 Fed. (2d) 866, certiorari denied, 308 U. S. 574. What was

said in *Anheuser-Busch, Inc., supra*, can hence not be repeated here.[2] As far as the plan itself went, there was thus an exact technical compliance with section 112 (b) (3), Internal Revenue Code.[3] See *S. H. Berch*, 35 B. T. A. 385; *Berch v. United States*, 54 Fed. Supp. 175; cf. *Hortense A. Menefee*, 46 B. T. A. 865; *Wilgard Realty Co.*, 43 B. T. A. 557, affd. (CCA-2), 127 Fed. (2d) 514, certiorari denied, 317 U. S. 655.

On the other approach, petitioners bargained for and obtained a continuing interest in the assets transferred which, in the language of the first *Minnesota Tea* case,[4] was "definite and material," receiving as they did "an interest in the affairs of the transferee which represented a material part [in fact all] of the value of the transferred assets." Parenthetically, the interest obtained in the transferee was, as it was here, a small minority interest.[5] See, generally, 24 Va. L. Rev. (1938), 418, 429; Paul, "Step Transactions in Selected Studies in Federal Taxation" (2d Series), 200, 250-2; Magill, "Federal Taxation in the Pre-War Decade," 42 Col. L. Rev. (1942), 356, 370-1; "The Parent-Subsidiary Problem Under the Non-Recognition Provisions," 34 Ill. L. Rev. (1939), 303, 316; "Continuity of Interest in Reorganization Under The Federal Income Tax," 49 Yale L. J. (1940), 1078, 1085-7.

That these assets were thereafter disposed of to a subsidiary would be significant only if that was the "plan." See *Whitney Corp.*, 38 B. T. A. 224, 235, affd. (CCA-8), 105 Fed. (2d) 438, or at least a contemplated variant of it. *Anheuser-Busch, Inc., supra*. The time element is a factor in reaching a conclusion on that issue. It is not by itself decisive. Cf. *Gertrude B. Chase*, 44 B. T. A. 39, affd. (CCA-2), 128 Fed. (2d) 740. Taken with other evidence it may show

---

[2] "It is evident that at the time Borden formulated the proposal it had in mind a plan to organize a subsidiary to take over the assets of New York, and it required the taxpayer to agree to cooperate in the carrying out of that plan. * * * When the realities of the transaction are considered there can be no doubt that the plan contemplated, and that the parties so understood it, that Borden would organize Delaware and that Delaware would take over the assets and carry on the business of New York. The plan as thus conceived and formulated was fully consummated with the full cooperation of the taxpayer and its subsidiary, New York. * * *" (115 Fed. (2d) 662, 666).

[3] SEC. 112. * * *

(b) EXCHANGES SOLELY IN KIND.—

* * * * * * *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

SEC. 112. * * *

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22))—

(1) The term "reorganization" means * * * (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation * * *

[4] *Helvering v. Minnesota Tea Co.*, 296 U. S. 378.

[5] "It [taxpayer] only got 7½ per cent. of the outstanding stock of the Grand Union Company * * *." Woodrough, Circuit Judge, dissenting, *Minnesota Tea Co. v. Commissioner* (CCA-8), 76 Fed. (2d) 797, 805.

a preconcerted arrangement in spite of denials by interested parties. Here we prefer to accept the testimony of petitioners' witnesses and have so formulated our findings.   Since this means the plan did not envisage the subsequent transfer, petitioners must be held to have retained the requisite continuity of proprietary interest as of the time the only transaction occurred in which they participated.   See Darrell, "Corporate Reorganizations and Readjustments," Practising Law Inst. (1945), pp. 10, 11.

Respondent's alternative determination must likewise be disapproved.   We could not here any more than in the *Steubenville, Armored Tank,* and *Dallas* cases,[6] in all of which respondent has now acquiesced, acq. I. R. B. No. 9, May 1, 1950; 1949–1 C. B. 1, find that the sale of corporate shares constituted a transfer of its assets by the corporation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[6] *Steubenville Bridge Co. et al.,* 11 T. C. 789 ; *Armored Tank Corp.* (N. Y.), 11 T. C. 644; *Dallas Downtown Development Co.,* 12 T. C. 114.